[Crim. No. 1441.  In Bank.—June 25, 1908.]

## Ex Parte C. D. GREENALL, on Habeas Corpus.

PHYSICIANS—PRACTICE WITHOUT CERTIFICATE—CONSTRUCTION OF PENAL STATUTE.—In order to bring any person within the penal provisions of the act of March 14, 1907, making it a misdemeanor for any person to practice or attempt to practice, or advertise or hold himself out as practicing medicine or surgery or osteopathy, or any other system or mode of treating the sick or afflicted in this state, without having at the time of so doing a valid unrevoked certificate as provided in the act, it must appear that he is engaged in the line of work specified as a business, or holding himself out as being so engaged.

ID.—INSUFFICIENT COMPLAINT IN JUSTICE'S COURT—HABEAS CORPUS.— A complaint in a justice's court charging a misdemeanor, under said act, which does not show the facts required to constitute a medical practice thereunder, but the allegations of which are entirely consistent with the innocence of the defendant, cannot support a conviction, and the defendant will be discharged upon *habeas corpus*.

APPLICATION for Writ of Habeas Corpus to the Sheriff of Los Angeles County to test the validity of a conviction in the Justice's Court of Los Angeles Township. E. E. Selph, Justice of the Peace.

The facts are stated in the opinion of the court.

Philaletha S. Michelsen, and Gavin W. Craig, for Petitioner.

J. D. Fredericks, and Grant R. Bennett, for Respondent.

William C. Tait, for Board of Medical Examiners, of Counsel, for Respondent.

ANGELLOTTI, J.—The petitioner was convicted in the justice's court of Los Angeles township of the county of Los Angeles on a complaint charging that he did, on or about the eighteenth day of June, 1907, "willfully and unlawfully treat the sick or afflicted by practicing the system or mode known as chiropractic without having at the time of so practicing a valid, unrevoked certificate from the board of medical examiners of the state of California entitling him so to do, as provided by an act of the legislature of the state of California

·entitled 'An act for the regulation of the practice of medicine and surgery, osteopathy, and other systems or modes of treating the sick or afflicted, in the state of California, and for the appointment of a board of medical examiners in the matter of said regulation,' approved March 14, 1907," (Stats. 1907, p. 252.) The judgment pronounced on said conviction was affirmed on appeal by the superior court of said county. Having been delivered into the custody of the sheriff of said county under such judgment, he sought to be discharged by this court on *habeas corpus,* and a writ having been issued he was released on bail pending a determination of this proceeding.

It is contended that the complaint in the justice's court did not state facts constituting a public offense. We are of the opinion that this contention must be held to be well founded. The act of March 14, 1907, provides that "Any person who shall practice or attempt to practice or advertise or hold himself out as practicing medicine or surgery, osteopathy, or any other system or mode of treating the sick or afflicted, in this state, without having, at the time of so doing, a valid, unrevoked certificate, as provided in this act, shall be guilty of a misdemeanor." The act nowhere states, as did the act of 1901 (Stats. 1901, p. 56), which was limited to a regulation of the practice of "medicine and surgery," what is meant by the term "practice" as used therein. The act of 1901, after providing that "Any person practicing medicine or surgery" without a license shall be deemed guilty of a·misdemeanor, provided in section 16: "The following persons shall be deemed as practicing medicine or surgery within the meaning of this act: 1. Those who profess to be, or hold themselves out as being, engaged as doctors, physicians or surgeons in the treatment of disease, injury or deformity of human beings. 2. Those who, for pecuniary or valuable consideration, shall prescribe medicine, magnetism or electricity in the treatment of disease, injury or deformity of human beings. 3. Those who, for pecuniary or valuable consideration, shall employ surgical or medical means or appliances for the treatment of disease, injury or deformity of human beings. . . . 4. Those who, for a pecuniary or valuable consideration, prescribe or use any drug or medicine, appliance, or medical or surgical treatment, or perform any operation for the relief or cure

of any bodily injury or disease." There was thus given by that act to the term "practicing medicine or surgery" a definite meaning, corresponding substantially with the popular understanding of the term. When we say that one is practicing medicine or surgery or osteopathy, we ordinarily mean that he is engaged in that line of work as a business, holding himself out as being so engaged, or for a consideration treating those who will accept his professional services, and we would not apply the term to one who incidentally and gratuitously suggests or puts into operation some method of treatment in the case of one who is "sick or afflicted." We are satisfied that the term "practice" in the act of 1907 should not be given any broader meaning than it had in the act of 1901. One who within this meaning "practices" medicine or surgery or osteopathy, or any other recognized mode of treatment of the sick, without a certificate, violates the provisions of the act. It might be sufficient in the complaint to charge simply that one had practiced medicine, or osteopathy, or chiropractics, without such certificate. In such an allegation, the word "practice" would, in view of the accepted meaning it is given when used in such connection, naturally and reasonably bear no other construction than the one we have described, and so construed would show an offense. But the complaint in the case before us, as we read it, contains no such allegation. The allegation was simply that the defendant did willfully and unlawfully "treat the sick or afflicted" without having at the time a valid unrevoked certificate as required by the act, the words "by practicing the system or mode known as chiropractic" being simply descriptive of the method by which he treated the sick. As thus used, the word "practicing" cannot reasonably be given the meaning we have described, but is synonymous with the word "using." We are informed in the briefs that the word "chiropractic" means a treatment somewhat analogous to that of osteopathy, the removal of the cause of disease without the use of drugs or any other means except the adjustment of the vertebra of the spine by manipulating them with the hand. If this be correct, the complaint simply charges that the defendant used this method in *"treating"* the sick or afflicted, without having any certificate under the act, and the allegations of the complaint would be fully sustained by proof that he

CLIII Cal.—49

had incidentally and gratuitously attempted to administer aid to one who was sick or afflicted by use of this method. It might as well be contended that a complaint simply charging that one treated a sick person by administering medicine, without having a certificate, would state a public offense under this act. To bring a person within the provisions of the act, it must appear that he practices, or attempts to practice medicine, etc., as a business or calling, or advertises, or holds himself out as so doing, and, as we have said above, an allegation that one "practiced medicine," or surgery, etc., might show this. As we read the act, the allegations of the complaint in the justice's court in this case are entirely consistent with the innocence of the defendant of any violation of its provisions. It therefore fails to show a public offense.

Counsel for respondent contends that if there is in this state such an offense or crime as that of which petitioner was convicted, the insufficiency of the complaint is immaterial on *habeas corpus*, citing *Ex parte Ruef*, 150 Cal. 665, [89 Pac. 605]. The rule of the Ruef case has never been applied by this court to proceedings in courts of inferior, as distinguished from courts of general, jurisdiction. To the contrary, it has been the uniform practice to consider on *habeas corpus* the question of the sufficiency of the complaint in such inferior courts, and to discharge the prisoner where such complaint failed to show a public offense under the laws of the state. This matter was fully considered in *Ex parte Kearny*, 55 Cal. 212, where the distinction between the two classes of courts was stated, and where the prisoner was discharged solely because of the insufficiency of the complaint in this regard. That decision has never been modified. In the Ruef case we were considering the question with relation to a proceeding pending in a court of general jurisdiction, the superior court of the city and county of San Francisco, while here we have a proceeding in a court which has uniformly been treated as an inferior court, a justice's court. (*Ex parte Kearny*, 55 Cal. 212.) It may be that a strong argument can be made in favor of the proposition that there is no logical basis for a distinction in this regard between courts of general jurisdiction and those of inferior jurisdiction, but the distinction has the support of no less an

authority than Chief Justice Marshall in the celebrated case of Tobias Watkins, 3 Pet. (U. S.) 193, and has been constantly adhered to by this court.

In view of our conclusion upon the question of the sufficiency of the complaint it is unnecessary to consider the contention of petitioner that the act of 1907 is unconstitutional.

It is ordered that the petitioner be discharged, and his bail exonerated.

Henshaw, J., Lorigan, J., and Beatty, C. J., concurred.