*937
 
 SHAW, P. J.
 

 This is another case like
 
 People
 
 v.
 
 Fowler
 
 (1938), 32 Cal.App.2d Supp. 737 [84 P.2d 326], where a licensed chiropractor prosecuted for violations of the provision of the provisions of the Business and Professions Code regarding medical practice (Div. 2, chap. 5) presents his chiropractic license as a sufficient authority for what he has done and a defense to the prosecution. We conclude that the defense is not sufficient here.
 

 The complaint herein contains two counts, charging, in the words of section 2141, Business and Professions Code, hereinafter quoted, violations of that section on the same patient, but on different days. Objection is made to this complaint on the ground that it is too vague and uncertain. It is in the words of the statute describing the offense, and must therefore be regarded as sufficient. (Pen. Code, §
 
 1426; People
 
 v.
 
 Saffell
 
 (1946), 74 Cal.App.2d Supp. 967, 973-7 [168 P.2d 497].)
 

 The evidence shows that on the day charged in the first count defendant came to see the patient, a woman, after having been called the day before, and found her in a serious condition of uterine hemorrhage, following a menstrual period. This hemorrhage had begun the day before and was quite severe. When he came she “felt very, very weak,” she said. After examining the patient and taking her pulse and blood pressure, defendant concluded that she was in a condition almost of shock and that the lost blood must be replaced immediately. He packed her uterus with gauze to stop the hemorrhage, an operation which took 20 minutes, and then ordered blood plasma by telephone from a laboratory. The laboratory brought the plasma and necessary equipment, and defendant himself made the transfusion, which was done by inserting a needle into a vein of her arm and connecting it with the bottle of plasma. Later on the same day he also injected into her flesh with a hypodermic needle some fluid, the nature of which the patient and her husband did not know, but which defendant testified was liver extract. He also gave her some white pills which defendant testified were probably parathyroid tablets. The second count relates to the next day. On this occasion he gave her another injection with a hypodermic needle of something which appears to have been liver extract.
 

 Section 2426 of the Business and Professions Code makes violation of any of the provisions of chapter 5 of di
 
 *938
 
 vision 2 a misdemeanor, and section 2141, also a part of that chapter, provides: “Any person, who practices or attempts to practice, or who advertises or holds himself out as practicing, any system or mode of treating the sick or afflicted in this State, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other mental or physical condition of any person, without having at the time of so doing a valid, unrevoked certificate as provided in this chapter, is guilty of a misdemeanor.” By other provisions of this chapter the certificate here referred to may be issued either by the Board of Medical Examiners or the Board of Osteopathic Examiners.
 

 A separate and independent enactment, known as the Chiropractic Act, adopted in 1922 as an initiative measure (Stats. 1923, p. lxxxviii; Deering’s Gen. Laws, Act 4811) authorizes the issuance of licenses to practice “chiropractic.” Defendant had such a license at the time of the acts complained of. The legal problems presented here are substantially identical with those considered in
 
 People
 
 v.
 
 Fowler, supra,
 
 (1938), 32 Cal.App.2d Supp. 737. This court discussed there at some length the construction of the several statutes above mentioned and their effect on each other, and without repeating all that was there said we approve of and adhere to it. As we said there, the Chiropractic Act is in the nature of an exception to the Business and Professions Code provisions cited, and is a complete defense here
 
 if
 
 the defendant has not exceeded the authority of his chiropractic license (32 Cal.App.2d Supp. 742). That authority is fixed by section 7 of the Chiropractic Act, which provides that licenses issued under it “shall authorize the holder thereof [1] to practice chiropractic in the state of California as taught in chiropractic schools or colleges; and, also, [2] to use all necessary mechanical, and hygienic and sanitary measures incident to the care of the body, but [3] shall not authorize the practice of medicine, surgery, osteopathy, dentistry or optometry, nor the use of any drug or medicine now or hereafter included in
 
 materia med/ica.”
 
 (Numbers inserted by us.)
 

 Considerable time was consumed at the trial by the introduction of evidence by defendant to show that what he did is now taught in chiropractic schools and colleges. This matter was discussed in the Fowler case,
 
 supra,
 
 where we held that section 7 authorized, by the provision, numbered as [1] above, nothing that was not chiropractic, as that term was understood in 1922, when the act was passed, and that the term was
 
 *939
 
 then defined as “A system of [or] the practice of adjusting the joints, especially of the spine, by hand for the curing of disease” (32 Cal.App.2d Supp. 745-6). We further said, regarding chiropractic schools: “The effect of the words ‘as taught in chiropractic schools or colleges’ is not to set at large the signification of ‘chiropractic,’ leaving the schools and colleges to fix upon it any meaning they choose. Were the word ‘chiropractic’ of unknown, ambiguous or doubtful meaning, this clause, ‘as taught’ etc., might serve to provide a means of defining or fixing its signification, but there is here no such lack of clarity. The scope of chiropractic being well known, the schools and colleges, so far as the authorization of the chiropractor’s license is concerned, must stay within its boundaries; they cannot exceed or enlarge them. The matter left to them is merely the ascertainment and selection of such among the possible modes of doing what is comprehended within that term as may seem to them best and most desirable, and so the fixing of the standards of action in that respect to be followed by chiropractic licensees.”
 

 In other words, the limits of permissible practice by the holder of a chiropractic license, as fixed by section 7 of the statute, do not extend, under the provision we have numbered [1], beyond the scope of chiropractic as that term was understood and defined in 1922, and the ambitious attempts of chiropractic schools or colleges to extend them by teaching other subjects under the guise of chiropractic must fail, so long as the statute remains as it is now. The statute has been amended by a proposal made by the Legislature in 1947 (Stats. 1947, pp. 676-680), and approved by popular vote; but these amendments so made have not changed section 7 of the act, and we find nothing in the changes of other sections which affects or alters the meaning of section 7.
 

 None of the acts of defendant above described come within the scope of chiropractic, as limited above and in the Fowler case, and hence they are not within the first authorization, as we have above numbered the two authorizing clauses of section 7. As we held in the Fowler case, at 32 Cal.App.2d Supp. 750, the limiting clause of section 7, numbered above as [3], prevents a chiropractic licensee from using drugs or medical preparations or severing or penetrating the tissues of human beings. Perhaps the packing of the uterus might be classed as one of the described measures incident to the care of the body listed in the second authorization. Of this
 
 *940
 
 we have some doubt, in view of the purpose for which it was done, which hardly suggests that it was “incident to the care of the body.” But however that may be, it is clear that the other acts done, the administration of blood plasma and the hypodermic injection, when done for the treatment of ailment, disease, or other physical condition, are not such mechanical, hygienic or sanitary measures incident to the care of the body, as may be used by chiropractic licensees. At least one of them was done on the occasion charged in each count, and the evidence in this respect is sufficient to support the conviction on each.
 

 In this connection, defendant cites and relies upon
 
 King
 
 v.
 
 Board of Medical Examiners
 
 (1944), 65 Cal.App.2d 644 [151 P.2d 282]. That was a case where the board had revoked the license of a drugless practitioner for unprofessional conduct. His license to act in that capacity did not authorize “in any manner severing or penetrating any of the tissues, of human beings except the severing of the umbilical cord.” (Bus.
 
 &
 
 Prof. Code, § 2138), and the doing of such acts in the treatment of disease and other specified conditions was made unprofessional conduct (Bus. & Prof. Code, § 2394). It appeared that petitioner, whose license had been revoked for unprofessional conduct, had taken a drop of blood from a person’s ear for the purpose of making a test of that person’s blood in connection with a lecture petitioner was giving, and it was held that since this was not done for treatment, it did not amount to unprofessional conduct. Assuming that a chiropractor might claim a like exemption from the prohibitions thrown around him, it is not applicable here, for the defendant’s acts were all done for purposes of treatment. The Supreme Court has just distinguished the King decision on this ground in the case of a licensed drugless practitioner who had performed a blood transfusion, holding that since he did this for the purpose of treating a patient he was guilty of unprofessional conduct, under the Business and Professions Code section 2394, above cited.
 
 (Cooper
 
 v.
 
 Board of Medical Examiners
 
 (1950), 35 Cal.2d 242, 251 [217 P.2d 630].)
 

 Defendant contends that what he did is not the practice of medicine or surgery, and seems to assume that if it is not, he may engage in it under his chiropractic license. Even if this premise were conceded, the conclusion would not necessarily follow. The reference in the part of section 7 of the Chiropractic Act numbered above as [3] to medicine, surgery, and the other matters listed with them, is not positive
 
 *941
 
 but negative. It declares that chiropractic licensees shall
 
 not
 
 engage in certain practices, but does not imply, and section 7 does not provide, that such licensees may engage in every sort of practice not listed as forbidden. (Compare the reasoning in
 
 In re Bust
 
 (1919), 181 Cal. 73, 79 [183 P. 548].) As we held in
 
 People
 
 v.
 
 Fowler, supra,
 
 32 Cal.App.2d Supp. 750, this provision is merely a limitation upon the two authorizing clauses [1] and [2],
 

 Defendant complains of the giving and refusal of several instructions, but the instructions given conform to our views on the law as above stated and those refused do not, so we deem it unnecessary to copy them here. We find no error in these matters.
 

 Section 2144 of the Business and Professions Code provides that “Nothing in this chapter prohibits service in case of emergency . . . ,” and defendant contends that this was a case of emergency and he is therefore exempt from prosecution for his actions above narrated. The code contains no definition of an “emergency,” but its meaning as used in the like provision of predecessors of the present statute, has received judicial scrutiny. In
 
 People
 
 v.
 
 Lee Wah
 
 (1886), 71 Cal. 80, 82 [11 P. 851], a prosecution for violation of the medical practice act of 1876, the court approved an instruction which told the jury, that an emergency “means a case in which the ordinary medical practitioners of the schools provided for by the statute, who are provided with the proper diploma, and submitted themselves to the proper examination, are not readily obtainable. This is an emergency as where the exigency is of so pressing a character that some kind of action must be taken before such parties can be found or procured. ’ ’ In
 
 People
 
 v.
 
 Vermillion
 
 (1916), 30 Cal.App. 417, 418 [158 P. 504], another case where a defendant charged with treating the sick without a proper certificate claimed an emergency as a defense, the court said: “There was no evidence tending to show that the services were of an emergency character; that is, services rendered by way of affording temporary relief until the services of a regular practitioner could be secured.” In
 
 People
 
 v.
 
 Cosper
 
 (1926), 76 Cal.App. 597, 600 [245 P. 466], a similar prosecution, where the defendant cared for a childbirth, his services having been arranged for several day in advance and his actual attendance covering a period of 20 hours before the birth, the court disposed of the question of emergency by saying: “During that time ample oppor
 
 *942
 
 tunity was afforded to secure a regularly licensed physician.”
 

 Under these interpretations and the facts of the present case the jury could not well do otherwise than find that there was no emergency. The defendant had been called the day before he came, and while it does not appear that he was then told the nature of the patient’s ailment, he learned it, according to his testimony, as soon as he saw her. He consumed 20 minutes in paeldng her with gauze, and some time elapsed thereafter before he did anything else, for not till after that was done did he telephone for the blood plasma and he then had to wait its arrival. During the same time he could have telephoned to and summoned a properly qualified physician, some of whom he knew, but he did not do so. That he was not proceeding on the emergency theory is apparent from this testimony given by him on cross-examination: “Q. At no time did you call a doctor, that is, a medical doctor? A. No, I felt I was capable enough to take care of her.”
 

 A witness called by the prosecution was permitted to testify, over objection, and in response to hypothetical questions, that the injection of some substance by a hypodermic needle into the body tissue of another constitutes the practice of medicine or surgery. This may have been error, for the question did not assume that the injection was made for the diagnosis, or treatment of disease or other condition mentioned in section 2141, Business and Professions Code, and hence did not include all the elements necessary to a proper answer. But we do not regard the error, if any, as prejudicial, considering the view we take and have already stated of the law and its application to the facts here.
 

 Testimony was also permitted, over defendant’s objection, that defendant had given hypodermic injections to the husband of the patient above mentioned. This was not charged in the complaint, and we see no sufficient reason for admitting the evidence. The case does not appear to be one of those where plan or design is material to the inquiry, nor can we see how the evidence was relevant to the question whether there was an emergency in the case of the patient herself. But we cannot see that the defendant could have been prejudiced by the error. The defendant admitted that he made such injections, and was plainly insisting, throughout the trial, that his chiropractic license gave him the right to make them. Though he was wrong in so insisting, the
 
 *943
 
 presence in the record of irrelevant instances could surely not harm him.
 

 The judgment is affirmed.
 

 Bishop, J., and Stephens, J., concurred.
 

 The opinion was modified to read as above and a petition for a rehearing was denied on June 5, 1950. The following opinion was then rendered:
 

 THE COURT.
 

 In his petition for rehearing defendant asserts that our decision cannot stand because it is in conflict with a regulation of the Board of Chiropractic Examiners adopted October 22, 1949, defining chiropractic thus: “The basic principle of chiropractic is the maintenance of the structural and functional integrity of the nervous system. The practice of chiropractic consists of all necessary means to carry out these principles.” (Cal. Admin. Code, title 16, subchap. 4, art. I, § 302(a).) The conflict between this regulation and the meaning of “chiropractic” as defined in our opinion herein, and in
 
 People
 
 v.
 
 Fowler
 
 (1938), 32 Cal.App.2d Supp. 737 [84 P.2d 326], is fairly obvious. Under this regulation a licensed chiropractor might very well engage in a great variety of medical and surgical practice; indeed, it would be difficult to discover any sort of treatment of the sick or afflicted that could not, by a little ingenuity, be brought within it. But this does not cause us to doubt the correctness of our decision; it leads us, rather, to the conclusion that the regulation is void. The Chiropractic Act is not at all doubtful or ambiguous, as clearly appears from the authorities cited in the Fowler case, at 32 Cal.App.2d 745-747. There is, therefore, no room for administrative construction to affect or alter its meaning. (Hodge v.
 
 McCall
 
 (1921), 185 Cal. 330, 334 [197 P. 86] ;
 
 Cullinan
 
 v.
 
 McColgan
 
 (1947), 80 Cal.App.2d 976, 979 [183 P.2d 115].) “An administrative officer may not make a rule or regulation that alters or enlarges the terms of a legislative enactment.” (Whitcomb
 
 Hotel, Inc.
 
 v.
 
 California Emp. Com.
 
 (1944), 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405] ; approved in
 
 First Industrial Loan Co.
 
 v.
 
 Daugherty
 
 (1945), 26 Cal.2d 545, 550 [159 P.2d 921]; to same effect,
 
 California Emp. Com.
 
 v.
 
 Kovacevich
 
 (1946), 27 Cal.2d 546, 553 [165 P.2d 917];
 
 California Drive In Restaurant Assn.
 
 v.
 
 *944
 

 Clark
 
 (1943), 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1208] ,•
 
 Cullinan
 
 v.
 
 McColgan, supra,
 
 (1947), 80 Cal.App.2d 976, 980; see also
 
 Boone
 
 v.
 
 Kingsbury
 
 (1928), 206 Cal. 148, 161-3 [273 P. 797] ;
 
 Bodinson Mfg. Co.
 
 v.
 
 California Emp. Com.
 
 (1941), 17 Cal.2d 321, 326 [109 P.2d 935].) “But if its meaning [that of a statute] he not doubtful, and the regulations are in conflict with that meaning, they are simply void.”
 
 (Hodge
 
 v.
 
 McCall, supra,
 
 185 Cal. 334.)