[Civ. No. 22359. Second Dist., Div. Two. Apr. 28, 1958.]

GEORGE W. NEWHOUSE, Appellant, v. BOARD OF OSTEOPATHIC EXAMINERS et al., Respondents.

Denison, Dietrich & Anderson for Appellant.

J. Robert Meserve for Respondents.

HERNDON, J.—Petitioner and appellant, a physician and surgeon licensed by the State Board of Osteopathic Examiners, was found guilty of unprofessional conduct[1] in proceedings

---

[1]Section 2392 of the Business and Professions Code: "The employing, directly or indirectly, of any suspended or unlicensed practitioner in the practice of any system or mode of treating the sick or afflicted or the aiding or abetting of any unlicensed person to practice any system or mode of treating the sick or afflicted constitutes unprofessional conduct within the meaning of this chapter."

before the board and petitioner's license and certificate to practice was suspended for a period of 30 days. Pursuant to section 1094.5 of the Code of Civil Procedure, appellant petitioned the superior court for a writ of mandate annulling the order of the board. An alternative writ issued, and the matter was heard on the record of the proceedings before the respondent board, including the accusation and exhibits introduced in that proceeding. Petitioner appeals from the ensuing judgment dissolving the alternative writ and denying his petition for a peremptory writ.

The charging portion of the accusation recites: "That on or about January 15, 1956, at Los Angeles, California, respondent [appellant here] did aid or abet William S. Hendricks in suturing the person of patient Eva Batiste, a practice of a system or mode of treating the sick or afflicted for which the said William S. Hendricks was not licensed by the State of California, the said William S. Hendricks not having at the time of so doing, a valid unrevoked certificate or license to practice as a physician or surgeon issued by the Board of Medical Examiners of the State of California or issued by the Board of Osteopathic Examiners of the State of California."

Dr. Hendricks, a duly licensed chiropractor in the State of California, was a sophomore student at the Los Angeles College of Osteopathic Physicians and Surgeons where he had been sponsored by appellant, Dr. Newhouse. Hendricks had expressed to appellant his desire to attend the delivery of a baby to further his education.

Sometime in June, 1955, Eva Batiste consulted Hendricks for prenatal care for her pregnancy. In the early part of August she developed complications which required her hospitalization, in connection with which she contacted appellant. In November, 1955, she was again hospitalized under the care of appellant. During these hospitalizations, it was determined that appellant would deliver the baby, and that she should make arrangements for delivery with the University Hospital. Although Dr. Hendricks had referred Mrs. Batiste to appellant, separate financial arrangements were made by her with Hendricks and appellant for the services performed by each of them.

On January 15, 1956, at about 12:40 a. m., appellant was notified by the hospital that Mrs. Batiste was ready to deliver. He ordered medication for her, directed that she be prepared

for delivery, and then telephoned Hendricks so that the latter could be present for the delivery. Appellant met Hendricks in the parking lot and they entered the hospital together.

In the labor room appellant examined Mrs. Batiste and found she was nearly ready to deliver. He told Mrs. Fries, the nurse in charge of the obstetrical section, that Mrs. Batiste should be taken to the delivery room. At that time the only delivery room in the hospital was occupied by another patient in a serious condition so that it was necessary for Mrs. Batiste to be delivered in the labor room on a regular hospital bed.

Shortly thereafter Mrs. Fries notified appellant that Mrs. Batiste was ready to deliver. She explained that the patient in the delivery room required most of her attention and asked if it would be sufficient if she set up the labor room for the delivery in her absence. She then supplied clothing and equipment to the labor room, left the doctors and returned to the delivery room.

When the doctors returned to the labor room, Mrs. Batiste had commenced her delivery. Appellant and Dr. Hendricks testified that the delivery was completed without the assistance of Dr. Hendricks, who merely observed, or of either of the two nurses present in the hospital at that time, whose attentions were occupied by the emergency situation existing in the delivery room.

Following the delivery, the baby was given to Mrs. Fries to be taken to the nursery. Appellant testified that in proceeding with the treatment, he detected an excessive bleeding beyond the normal amount from a laceration about two centimeters long on the left side of the vestibule of the vagina extending to the region of the clitoris. Appellant testified that the area is one of heavy blood supply and the laceration was bleeding profusely. He testified that because of the position of the patient on the bed rather than a delivery table, the location of the laceration with regard to access, and the lack of aseptic conditions, he concluded that he needed assistance to stop the bleeding. Appellant further testified that he asked Mrs. Fries for assistance but was advised of the urgency of the situation in the delivery room and that he had concluded an emergency situation existed when he asked Dr. Hendricks for assistance. Dr. Hendricks testified that he had never had any instruction in his chiropractic school in the

use of a suturing needle, and that he had never had one in his hand before.

Both appellant and Dr. Hendricks testified that appellant directed Hendricks to break the suture vial and instructed him as to placing the needle in a holder. According to appellant, he retracted the labia, proximated the edges of the laceration, and showed Dr. Hendricks where to place the needle for inserting a suture. Two sutures in all were taken by Dr. Hendricks, who testified as to the minute direction of his acts by appellant. Dr. Hendricks testified that he attended the delivery solely as an observer and received no fee or emolument for such attendance.

Kathryn M. Jaffke, night supervisor at the University Hospital, testified that she observed Dr. Hendricks insert a suture in the body of Eva Batiste. She testified that she was approximately 5 or 6 feet away from Dr. Hendricks at that time and that she observed the incident for approximately four minutes. She testified that appellant at that time was not doing anything and did not have his hands on the patient at the time of the suturing. This testimony was in direct conflict with that of appellant and Dr. Hendricks as to appellant's participation in the operation.

 Appellant first contends that the evidence is insufficient to support the finding and conclusion that the appellant was guilty of unprofessional conduct as defined in section 2392 of the Business and Professions Code. Appellant's position is that proof of an isolated instance in which appellant requested and obtained the assistance of an unlicensed practitioner in a nonemergency situation is not and cannot be the aiding and abetting of such person "to *practice* any system or mode of treating the sick or afflicted." (Emphasis added.)

It is not disputed that Dr. Hendricks inserted needles and sutures in the body of a patient, penetrating or severing the tissues of the human body, a procedure for which he was not licensed. (See *People* v. *Fowler*, 32 Cal.App.2d Supp. 737 [84 P.2d 326]; *In re Hartman*, 10 Cal.App.2d 213, 217 [51 P.2d 1104]; *People* v. *Mangiagli*, 97 Cal.App.2d Supp. 935, 939 [218 P.2d 1025]; *People* v. *Nunn*, 65 Cal.App.2d 188, 194 [150 P.2d 476].) Nor is it disputed that appellant directed Hendricks in the performance of a procedure for which he was not licensed. It is clear that appellant aided and abetted the acts of Dr. Hendricks. (See *Anderson* v. *Board of Medical Examiners*, 117 Cal.App. 113, 115 [3 P.2d 344].)

But appellant argues that aiding and abetting certain acts does not constitute aiding and abetting the *practice* of these acts. Appellant supports his argument with a series of citations of cases in which the courts have narrowly construed the terms "practice" and "practitioner" where the issue was whether an unlicensed person was practicing medicine. (See *Chalmers-Francis* v. *Nelson,* 6 Cal.2d 402, 404 [57 P.2d 1312]; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242, 256 [217 P.2d 630, 18 A.L.R.2d 593] (dissenting opinion); *Pacific Mutual Life Ins. Co.* v. *Cunningham* (S.D. Fla. 1932), 54 F.2d 927. Appellant relies on the construction of the word "practice" expressed by the Supreme Court in *Ex Parte Greenall,* 153 Cal. 767 [96 P. 804]. There the court in construing the statutory predecessor of the Business and Professions Code sections comprising the Medical Practice Act said:

"There was thus given by that act to the term 'practicing medicine or surgery' a definite meaning, corresponding substantially with the popular understanding of the term. When we say that one is practicing medicine or surgery or osteopathy, we ordinarily mean that he is engaged in that line of work as a business, holding himself out as being so engaged, or for a consideration treating those who will accept his professional services, and we would not apply the term to one who incidently and gratuitously suggests or puts into operation some method of treatment in the case of one who is 'sick or afflicted.' " (*Ex parte Greenall, supra,* 153 Cal. 767, 769; see also *People* v. *T. Wah Hing,* 79 Cal.App. 286 [249 P. 229].)

▉ If this were a criminal or disciplinary action against Dr. Hendricks, the citation of *Ex Parte Greenall, supra,* and the argument advanced that an isolated act by an unlicensed person at the direction and under the minute supervision of a licensed practitioner cannot constitute the "practice" of medicine would be at the least persuasive. (*Cf. Chalmers-Francis* v. *Nelson,* 6 Cal.2d 402 [57 P.2d 1312]; *Cooper* v. *State Board of Medical Examiners,* 35 Cal.2d 242 [217 P.2d 630, 18 A.L.R.2d 593].) However, in the present case the charge is unprofessional conduct on the part of appellant, Dr. Newhouse, and the precise question before us is whether the acts of Dr. Hendricks constitute "practice" within the terms of a different statute, section 2392 of the Business and Professions Code. It is to *this* section that we must apply

appropriate rules of construction in order to determine whether or not the Legislature intended the phrase ''to practice any system or mode of treating the sick or afflicted'' to include the performance of a single operational procedure by an unlicensed person. If the act of Hendricks in inserting the sutures constituted ''practice'' within the meaning of section 2392, then appellant was aiding and abetting within the meaning of the statute.

Examining the statute we find that the first prohibition is against the employment of an unlicensed person in the ''practice of any system or mode of treating the sick or afflicted. . . .'' Were we to accept appellant's argument that ''practice'' as used in section 2392 means engaging in a line of work as a business, and holding oneself out as being so engaged (see *Ex Parte Greenall, supra,* 153 Cal. 767, 770), we would be constrained to hold that an employment for compensation of an unlicensed person to perform an appendectomy (if the performance of only one operation could be proved) would not fall within the strictures of the statute. Such a holding would largely nullify a statute whose manifest object is the protection of the public from certain forms of treatment by unlicensed, and presumably unqualified persons. Thus, it seems clear that the *employment* of any person to perform any single act of medical or surgical procedure which the person employed was not licensed to perform would constitute unprofessional conduct within the meaning of the statute. Since the identical phraseology is repeated in the enunciation of the prohibition against *aiding and abetting* the same described ''practice,'' every applicable canon of construction would dictate that the repeated phraseology should be given the same meaning and effect.

A similar construction of the statutory predecessor of section 2392 was applied in *Howson* v. *Board of Medical Examiners,* 128 Cal.App. 35 [16 P.2d 693]. There the court affirmed a judgment approving an order of the Board of Medical Examiners by which the petitioner was suspended for unprofessional conduct in ''employing directly or indirectly any suspended or unlicensed practitioner in the *practice* of any system or mode of treating the sick or afflicted, . . .'' (Emphasis added.) In construing the wording of what is presently section 2392 of the Business and Professions Code, the court said, ''The definition in the act is so all-embracing that there is no need for construction in order to bring any particular set of facts within its terms. Every person of common knowl-

edge knows what 'treating the sick or afflicted' means. *The doing of any act,* in accordance with 'any system or mode' of treatment, would be within the terms of the definition." (*Howson* v. *Board of Medical Examiners,* 128 Cal.App. 35, 36-37 [16 P.2d 693].) (Emphasis added.)

█ Thus the evidence is sufficient to support the conclusion that appellant was guilty of unprofessional conduct in aiding and abetting Dr. Hendricks' insertion of sutures into the body of Mrs. Batiste in violation of his license unless under the circumstances appellant was justified in calling on Dr. Hendricks for assistance by virtue of the existence of an emergency situation.

█ Section 2144 of the Business and Professions Code provides in part that nothing in the chapter relating to the practice of medicine "prohibits service in the case of an emergency," and appellant's second argument is that Dr. Hendricks was assisting him in an emergency situation and that the evidence does not support the finding that "[A]t the time the petitioner did direct said William S. Hendricks to insert said sutures the petitioner knew that said laceration did not endanger the life of said patient and that no emergency existed which required the assistance of a person to perform said acts on the body of the patient by a person who was not duly licensed so to do by the laws of the State of California, . . ."

It may be conceded that the circumstances, including the lack of an obstetrical nurse, a normal delivery room, and desirable lighting facilities made the situation unusual. But there is no evidence that Mrs. Batiste's life was in immediate danger. Appellant testified that the flow of blood could have been retarded by pressure on the laceration, and he thought there were bell cords around the bed with which he could have called for assistance. Although the code does not define "emergency" as used in section 2144 of the Business and Professions Code, the cases have attempted a definition. In *People* v. *Lee Wah,* 71 Cal. 80, 82 [11 P. 851], cited and quoted in *People* v. *Mangiagli,* 97 Cal.App.2d Supp. 935, 941 [218 P.2d 1025], the court approved an instruction which told the jury that "an emergency 'means a case in which the ordinary medical practitioners of the schools provided for by the statute, who are provided with the proper diploma, and submitted themselves to the proper examination, are not readily obtainable. This is an emergency as where the exigency is of so pressing a character that some kind of action must be taken

before such parties can be found or procured.' " The testimony of Nurse Jaffke, if believed, to the effect that Dr. Hendricks performed the operation without the participation of appellant is substantial evidence to support the finding that no emergency existed.

Moreover, the trial court is authorized by law to exercise its judgment on the evidence before the board. (*Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790, 795 [136 P.2d 304].) [5] On appeal all conflicts must be resolved in the respondent's favor and all reasonable inference indulged in to uphold the findings and judgment of the trial court. (*Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20].) In the instant case the board was not required to believe the testimony of appellant that an emergency existed within the purview of section 2144, even though such testimony had not been controverted by other witnesses. (*Kendall* v. *Board of Osteopathic Examiners,* 105 Cal.App.2d 239, 246 [233 P.2d 107].) The power to determine whether an emergency existed rested first with the board, and second with the trial court. "Assuming that the foregoing provision applies [Bus. & Prof. Code, § 2144], whether an emergency existed was for the board to determine in the first instance. If the determination of such question was supported by the evidence which in effect the trial court has decided, such decision by the trial court must be upheld on appeal." (*Rilcoff* v. *State Board of Medical Examiners,* 90 Cal.App.2d 603, 606 [203 P.2d 844].)

Appellant also contends that the hearing officer improperly sustained objections to questions asked of Mrs. Batiste by which appellant intended to establish that Dr. Hendricks was not engaged in a practice beyond the scope of his license. Since the issue was not whether Dr. Hendricks was improperly engaged in the practice of medicine, but whether his acts on the occasion in question fell within section 2392 of the Business and Professions Code, such questions were immaterial and therefore properly excluded.

Finally, appellant contends that the accusation in the present case was not sufficient to give the board jurisdiction to proceed because it failed to allege a "practice" by Dr. Hendricks, citing *Ex parte Greenall,* 153 Cal. 767 [96 P. 804]. This contention is based on the erroneous theory that the accusation must allege that Dr. Hendricks practiced or attempted to practice medicine as a business or calling, or held himself out as so doing, to bring appellant within section 2392 of the

Business and Professions Code. (See *Stuck* v. *Board of Medical Examiners*, 94 Cal.App.2d 751, 756 [211 P.2d 389].)

The judgment is affirmed.

Fox, P. J., and Kincaid, J. pro tem.,* concurred.

A petition for a rehearing was denied May 23, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 25, 1958. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.