O’Connor, C J.,
dissenting.
{¶ 42} I agree with the majority’s holding that R.C. 2305.23 applies to any person who administers emergency care or treatment. But I dissent from the remainder of the opinion and syllabus, including the majority’s holding that an “emergency” for purposes of R.C. 2305.23 requires “an unforeseen combination of circumstances” and its affirmation of the use of summary judgment to determine the applicability of the statute to the facts of this case.
{¶ 43} I would hold that the definition of an “emergency” includes sudden events or circumstances that require urgent or immediate attention or action, regardless of whether the events were foreseeable. And I would hold that questions about the application of R.C. 2305.23 to the facts presented in a given case are typically questions of fact for the jury or other fact-finder.
ANALYSIS
Emergencies are not limited to unforeseeable circumstances and foreseeability is irrelevant for purposes of R.C. 2305.23
{¶ 44} The portion of Ohio’s Good Samaritan statute that is relevant to this appeal states: “No person shall be liable in civil damages for administering emergency care or treatment at the scene of an emergency * * *, for acts performed at the scene of such emergency, unless such acts constitute willful or wanton misconduct.” R.C. 2305.23.
{¶ 45} “There is no definition of ‘emergency medical care or treatment’ in the Revised Code.” Campbell v. Colley, 113 Ohio App.3d 14, 19, 680 N.E.2d 201 (4th Dist.1996). When a statute does not define a term, courts are to give the term its usual, normal, or customary meaning. Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 12; R.C. 1.42. “The process of judicial interpretation of a statute involves, ‘reading undefined words and phrases in context and construing them in accordance with the rules of grammar and common usage.’ ” Wolf v. E. Liverpool School Dist. Bd. of Edn., 7th Dist. Columbiana No. 03 CO 5, 2004-Ohio-2479, ¶ 40, quoting State ex rel. Portage *240 Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd., 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 36.
{¶ 46} Here, the majority defines “administering emergency care” according to the definitions of “emergency” found in some dictionaries. See, e.g., majority opinion at ¶ 31. The majority adopts those definitions, which include the legal concept of foreseeability, and then sets forth a definition of “administering emergency care” as “rendering medical and any other form of assistance to the safety and well-being of another when the result of an unforeseen combination of circumstances calls for immediate action.” (Emphasis added.) Majority opinion at paragraph two of the syllabus. But the majority is not mindful that while determining legislative intent primarily involves an analysis of the statutory language, it is also necessary to consider the legislature’s purpose in enacting the law. Fisher v. Hasenjager, 116 Ohio St.3d 53, 2007-Ohio-5589, 876 N.E.2d 546, ¶ 20, citing State ex rel. Watkins v. Eighth Disk Court of Appeals, 82 Ohio St.3d 532, 535, 696 N.E.2d 1079 (1998).
{¶ 47} With that purpose in mind, I would not limit the statutory term “emergency care” to an unforeseen combination of circumstances. Several reasons support a definition of “emergency” that does not incorporate the concept of foreseeability.

The urgency of a situation, not its foreseeability, is critical to defining an emergency in a manner consistent with the purpose of the statute

{¶ 48} First, we must be cognizant that the purpose of the statute is to promote the public policy of encouraging the rendering of aid to those in dire circumstances. See Primes v. Tyler, 43 Ohio St.2d 195, 201, 331 N.E.2d 723 (1975), fn. 5 (describing R.C. 2305.23’s immunity as an effort “to further a legitimate legislative objective of providing emergency medical assistance to injured persons where delay might result in death or great bodily injury”). The majority correctly holds that the statute is intended to shield all those who give aid or assistance and not to limit the protections of the statute to people with medical education, training, and experience. See majority opinion at paragraph one of the syllabus.
{¶ 49} But given the broad scope of the statute and its intent to shield well-intended individuals from liability for rendering aid, it is unlikely that the General Assembly intended to incorporate a legal concept (foreseeability) into the definition of emergency because the average person is unlikely to have a sufficient understanding of the legal aspects of foreseeability. Rather, it is more likely that the legislative intent was to rely on commonly used and understood words, like “sudden,” “unexpected,” “urgent,” and “immediate,” to define an emergency.
*241 {¶ 50} Requiring that the circumstances giving rise to the “emergency” be unforeseeable is not reflective of the legislative intent. And the incorporation of foreseeability into the understanding of an “emergency” could lead to confusion for both Ohio’s bench and bar as well as for its ball parks.
{¶ 51} Consider a high school’s varsity football team playing on a Friday night in autumn. As those who attend games often see, high schools across Ohio retain ambulances for football games because players and spectators can sustain serious injuries during the game. Indeed, it is now widely understood that players can suffer concussions during games. Lueke, High School Athletes and Concussions, 32 J.Leg.Med. 483, 485, 501 (2011) (noting that “[e]oncussions are inevitable in high school sports” and that there are 300,000 sports-related concussions each year in the United States, that concussions are twice as likely to occur during games than in practice, and that the majority of concussions in high school athletics occur while students play football, soccer, and basketball). Those injuries are thus wholly foreseeable, but nonetheless, they require immediate, urgent care. Id. at 489-490 (allowing a player with a concussion to return to the field can lead to long-term neuropsychological dysfunction, severe disability, and death). Under the majority’s definition, a concussion at a football game might not qualify as an “emergency.”
{¶ 52} Similarly, we expect that there will be lifeguards on duty at public swimming pools. And the presence of lifeguards signifies the presence of potential emergencies, including drowning and injuries sustained from diving. In other words, injuries and life-threatening conditions are foreseeable at water parks and pools, and those injuries and conditions require immediate action.
{¶ 53} In construing Ohio’s Good Samaritan statute, we must be mindful that the salient inquiry in cases involving R.C. 2305.23 and other “emergencies” is the urgency of the situation, not the foreseeability of it. When “[l]ife or wholeness of body may be in the balance,” we should not radically narrow the definition of emergency. Mary Day Nursery, Children’s Hosp. v. Akron, 90 Ohio Law Abs. 457, 189 N.E.2d 745, 750 (C.P.1961).
{¶ 54} “Within the [Good Samaritan] Act’s intended meaning an emergency occurs whenever a stranger appears (or may be perceived) to be ill or in need of succor.” (Emphasis deleted.) Jackson v. Mercy Health Ctr., Inc., 1993 OK 155, 864 P.2d 839, 845. “[L]imited and technical definitions given to the concepts of ‘emergency’ and ‘emergency care’ frustrate the purpose of Good Samaritan legislation,” McDowell v. Gillie, 2001 ND 91, 626 N.W.2d 666, ¶ 18, and should be avoided. This is particularly true given the intent of Good Samaritan laws, which is to abrogate the common-law rescue doctrine and to encourage people to risk helping strangers in need of emergency assistance without fear of liability, even when they have no duty to render aid. “Generally, a bystander has no duty to *242 provide affirmative aid to an injured person, even if the bystander has the ability to help.” Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1178 (3d Cir.1994), citing Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on the Law of Torts, Section 56, at 375 (5th Ed.1984); McDowell at ¶ 6 (“In an attempt to eliminate the perceived inadequacies of the common law rules, all states have enacted some form of Good Samaritan legislation to protect individuals from civil liability for any negligent acts or omissions committed while voluntarily providing emergency aid or assistance”).
{¶ 55} But under the majority’s definition of an emergency, the foreseeable nature of injuries, including those at football games and swimming pools, renders them outside the scope of R.C. 2305.23’s protections. It is inconceivable that the General Assembly intended such a result. And if such a limitation was desired, the legislature could have incorporated it into the statute. It is the legislature’s province to do so; I would not limit the term “emergency” in R.C. 2305.23 by judicial fiat.[1] Colbert, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, at ¶ 15.
To the extent that dictionaries have utility in defining “emergency, ” we should look to those definitions that existed when the General Assembly enacted R.C. 2305.23
{¶ 56} Second, to the extent that dictionary definitions of “emergency” are illustrative of the legislative intent, we must be mindful that a judge or justice often has several versions of a definition from which to choose. While the majority correctly cites certain definitions of which it approves, other dictionaries define the term “emergency” differently.[2] Thus, we should rely on dictionary *243 definitions that were contemporaneous with the passage of R.C. 2305.23 in 1977 and that a legislator could have consulted.
{¶ 57} The Sixth District’s definition of “emergency” in Goebel’s Emergency Med. Serv., Inc. v. Sandusky Cty. Bd. of Commrs., 58 Ohio App.3d 25, 567 N.E.2d 1330 (6th Dist.1989) based on the definition of “emergency” as it appeared in a 1983 dictionary, is more consistent with the common meaning of the word at the time of the statute’s enactment. And that definition — “ £a sudden or unexpected occurrence * * * demanding prompt action; urgent necessity’ ” — omits the notion of foreseeability. See Id. at 26, quoting Webster’s New Universal Unabridged Dictionary 593 (2d Ed.1983).

Ohio courts interpret “emergency” without reference to foreseeability in other statutory schemes

{¶ 58} Third, when the term “emergency” is undefined in a statute, Ohio’s courts often have interpreted the word without reference to foreseeability.
{¶ 59} In the context of a statute requiring “emergency medical or hospital care” for the indigent, this court has recognized that “commonly understood, an emergency is a sudden or unexpected occurrence which demands immediate action.” (Emphasis sic.) Mansfield Gen. Hosp. v. Richland Cty. Bd. of Commrs., 170 Ohio St. 486, 166 N.E.2d 224 (1960), paragraph three of the syllabus. And as the Tenth District succinctly explained in another context,
[B]ecause the term “emergency” in R.C. 2917.13(A)(1) is undefined by statute, the term is given its common, everyday meaning. The common dictionary definition of “emergency” is “ ‘ “an unexpected situation or sudden occurrence of a serious and urgent nature that demands immediate attention.” ’ ”
State v. Zaleski, 10th Dist. Franklin No. 10AP-101, 2010-Ohio-5557, ¶ 12, quoting State v. Blocker, 10th Dist. Franklin No. 06AP-313, 2007-Ohio-144, ¶ 51, quoting Wolf, 2004-Ohio-2479, ¶ 40, quoting American Heritage Dictionary 448 (2d College Ed.1922).
*244 {¶ 60} When defining the term “emergency call” for purposes of political-subdivision liability under R.C. 2744.02(B)(1), our appellate courts have recognized that the definition is a broad one and one that they are “reluctant to abridge.” Carter v. Columbus, 10th Dist. Franklin No. 96APE01-103, 1996 WL 465252, *3 (Aug. 15, 1996). See also Bates v. Cincinnati, 1st Dist. Hamilton Nos. C-960659 and A-9306972, 1997 WL 684840, *2 (Oct. 31, 1997) (describing the “open-ended definition of ‘emergency call’ as provided by the legislature” in R.C. 2744.01(A)). Similarly, Ohio courts broadly define “emergency” when characterizing situations to which emergency personnel respond. See, e.g., Campbell, 113 Ohio App.3d at 20, 680 N.E.2d 201, citing Moore v. Columbus, 98 Ohio App.3d 701, 706, 649 N.E.2d 850 (10th Dist.1994) (definition of “emergency” is open-ended and not limited to inherently dangerous situations or situations in which human life is in danger); Goebel’s, 58 Ohio App.3d at 26, 567 N.E.2d 1330 (term “emergency patient” does not require that the patient’s condition be life-threatening). See also Radecki v. Lammers, 15 Ohio St.2d 101, 103, 238 N.E.2d 545 (1968) (in wrongful-death case in which the “sudden emergency” doctrine was implicated, finding no error in jury instruction stating that “[a]n emergency arises when there is a sudden or unexpected occurrence, or combination of occurrences which demand prompt action” when the facts supported the instruction); Miller v. McAllister, 169 Ohio St. 487, 160 N.E.2d 231 (1959), paragraph six of the syllabus (“In a negligence action, the so-called ‘emergency doctrine’ applies only where there was a sudden and unexpected occurrence of a transitory nature which demanded immediate action without time for reflection or deliberation and does not comprehend a static condition which lasted over a period of time”).
{¶ 61} Consistent with the broad judicial definitions of “emergency” in other Ohio statutory schemes, I would not limit an “emergency” for purposes of R.C. 2305.23 to those situations that are unforeseeable.

Other state courts interpret “emergency” in their Good Samaritan statutes without reference to foreseeability

{¶ 62} Notably, other states have not limited the term “emergency” in their Good Samaritan laws to circumstances that are unforeseeable. Instead, they focus both on the nature of an emergency and the purpose of Good Samaritan laws. As a California appellate court explained,
An emergency within the meaning of the Good Samaritan statutes exists when there is an urgent medical circumstance of so pressing a character that some kind of action must be taken. It would seem obvious that in determining whether a patient’s condition constitutes such an emergency the trier of fact must consider the gravity, the certainty, and the immediacy of the consequences to be expected if no action is taken. However, *245 beyond observing that these are the relevant considerations, the variety of situations that would qualify as emergencies under any reasonable set of criteria is too great to admit of anything approaching a bright line rule as to just how grave, how certain, and how immediate such consequences have to be.
(Citations omitted.) Breazeal v. Henry Mayo Newhall Mem. Hosp., 234 Cal.App.3d 1329, 1338, 286 Cal.Rptr. 207 (1991). See also Newhouse v. Osteopathic Examiners Bd., 159 Cal.App.2d 728, 735, 324 P.2d 687 (1958) (an emergency exists “where the exigency is of so pressing a character that some kind of action must be taken”).
{¶ 63} In formulating definitions of “emergency,” other courts have effectuated the public policies that drove the enactment of Good Samaritan laws but recognized the limitations of torts, from which the Good Samaritan doctrine devolves. For example, in Texas law, “[a]n ‘emergency’ is a condition arising suddenly and unexpectedly and not proximately caused by any negligent act or omission of the person in question and which calls for immediate action on his part and without time for deliberation.” Eoff v. Hal & Charlie Peterson Found., 811 S.W.2d 187, 191 (Tex.App.1991), citing Goolsbee v. Texas & New Orleans RR. Co., 150 Tex. 528, 243 S.W.2d 386, 388 (1951). Thus, it is not necessary to use the legal concept of foreseeability to limit the scope of an “emergency” for purposes of R.C. 2305.23.
Summary judgment was entered improperly by the trial court and affirmed by the appellate court; the determination of emergency is a question of fact for a jury
{¶ 64} As the opinion of my fellow dissenter illustrates, reasonable minds may differ whether an emergency was extant in the cause before us. That dissenting opinion illustrates why the determination whether an emergency exists for purposes of R.C. 2305.23 is a question of fact for the jury rather than a question of law for the judge.
{¶ 65} Although this court has never directly addressed this issue, our trial courts correctly recognize that, at least in some cases, whether the statutory elements of R.C. 2305.23 have been proven are questions for the jury. See, e.g., Dayton v. Brennan, 64 Ohio Law Abs. 525, 112 N.E.2d 837 (M.C.1952) (whether an emergency existed that would exempt an officer from speeding laws is a question of fact for the jury). Accord Butler v. Rejon, 9th Dist. Summit No. 19699, 2000 WL 141009 (Feb. 2, 2000) (trial court’s refusal to instruct the jury on the Good Samaritan statute was proper because there was no evidence to support the defense, indicating that had there been sufficient evidence, the question would have gone to the jury).
*246 {¶ 66} Our sister courts have directly addressed the propriety of summary judgment in the context of Good Samaritan laws. “[T]here is ample authority that [the] applicability [of the Good Samaritan statute] as to whether an emergency existed or not may be a question of fact for the jury.” Jackson v. Mercy Health Ctr., 1993 OK 155, 864 P.2d at 846 (Summers, J., dissenting).
{¶ 67} As the Supreme Court of North Dakota has explained, a Good Samaritan act is essentially a defense that requires the proponent to establish that he or she reasonably believed that an emergency was occurring, that immediate action was required to prevent death or serious injury, and that he or she could successfully assist the party in peril. McDowell, 2001 ND 91, 626 N.W.2d 666, ¶ 21. Accord Willingham v. Hudson, 274 Ga.App. 200, 202-203, 617 S.E.2d 192 (2005) (noting that the burden of proof rested upon the proponent of the state’s Good Samaritan immunity defense, that he discharged his burden by citing affidavits, deposition testimony, and medical records and invoices, and that the burden then shifted to the person who had been in peril to point to specific documentary evidence of record, beyond mere accusations, that gave rise to a triable issue refuting the applicability of Good Samaritan immunity).
{¶ 68} Evaluating the putative Good Samaritan requires looking at the “overall perception of the nature and severity of the injury or illness and the total emergency situation.” McDowell at ¶ 21. “Thus, the statute combines elements of the reasonable person standard as well as the aider’s subjective state of mind. Generally, issues involving the reasonable person standard and a person’s subjective state of mind are inappropriate for disposition by summary judgment.” Id. And the question whether there is an emergency that warrants application of a Good Samaritan statute is “an issue of fact not amenable to summary judgment disposition.” Id., citing Travers v. Vaz, 714 A.2d 603, 604 (R.I.1998). See also Charleston Station, L.L.C. v. Stephens, Nev.Sup.Ct. No. 63943, 2015 WL 9480322, *3 (Dec. 23, 2015) (in appeal arising in part from the application of Nevada’s Good Samaritan statute, reiterating rule that “[e]xcept in rare cases where the reasonableness of the defendant’s actions is clear, determining whether a defendant acted reasonably is a question of fact for the jury to decide”); Travers at 604 (“whether there existed an emergency situation that warranted the application of the Good Samaritan statute is also an issue of fact”); Jefferson Cty. School Dist. R-1 v. Justus, 725 P.2d 767, 771 (Colo.1986) (holding that the application of the “assumed duty” or Good Samaritan doctrine is “obviously not a purely legal question,” but rather, a mixed question of law and fact).
{¶ 69} I would hold, consistent with other states’ high and appellate courts, that whether a party has properly invoked the application of a Good Samaritan statute is a mixed question of law and fact for the jury, at least in some cases. This is such a case.
*247 CONCLUSION
{¶ 70} I dissent as to the definition of “emergency” provided by the majority that limits emergencies to “unforeseeable” situations, and I dissent from its judgment, which affirms the grant of summary judgment on an issue that should be decided by the jury.
Lanzinger, J., concurs in the foregoing opinion.

. The preferred practice is for a legislature to define the terms in its statutes, including Good Samaritan acts. But given that the word “emergency” is well known in common parlance, it seems likely that the General Assembly intended it to carry the same broad meaning in R.C. 2305.23. And if it so chooses, the General Assembly can respond to the court’s interpretation of “emergency” in this case by amendment that makes clear its intent. Indeed, after the California Supreme Court interpreted California’s Good Samaritan law to grant immunity only to persons who render emergency medical care and not to persons who render emergency nonmedical care, Van Horn v. Watson, 45 Cal.4th 322, 86 Cal.Rptr.3d 350, 197 P.3d 164 (2008), the California Legislature amended the statute (Cal.Health & Safety Code, Section 1799.102(a)), to state explicitly that “[n]o person who in good faith, and not for compensation, renders emergency medical or nonmedical care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission.” (Emphasis added.) See Verdugo v. Target Corp., 59 Cal.4th 312, 327, 173 Cal.Rptr.3d 662, 327 P.3d 774 (2014).

. Notably, medical dictionaries, which have relevance to the statute given its intent and scope, do not inject notions of foreseeability into the definition of emergency:
The Attorney’s Dictionary of Medicine defines “emergency” as “[a]n urgent demand for medical or surgical action; a medical or surgical condition demanding immediate action.” 2 J.E. Schmidt, Attorney’s Dictionary of Medicine E 71 (1999). Stedman’s Medical Dictionary *243 defines “emergency” as “[a]n unlooked for contingency or happening; a sudden demand for action.” Stedman’s Medical Dictionary 456 (24th ed.1982).
Rivera v. Arana, 322 Ill.App.3d 641, 650-651, 255 Ill.Dec. 333, 749 N.E.2d 434 (2001), abrogated on other grounds by Home Star Bank & Fin. Servs. v. Emergency Care & Health Org., Ltd., 2014 IL 115526, 379 Ill.Dec. 51, 6 N.E.3d 128.