[Civ. No. 8563.   Second Appellate District, Division One.—January 25, 1935.]

WESLEY M. BARRETT, Respondent, v. BOARD OF OSTEOPATHIC EXAMINERS OF THE STATE OF CALIFORNIA, Appellant.

Otis D. Babcock for Appellant.

Harry S. Harper for Respondent.

HOUSER, J.—This is an appeal from a judgment rendered by the superior court that ensued from a hearing on a writ of *certiorari* theretofore issued by said court with reference to certain proceedings had before the appellant board, which proceedings resulted in the making of its order or judgment, by which the license of respondent herein to practice in this state the system of treatment known as osteopathy, was revoked.

The only concern of this court in the matter is to determine whether the evidence received by the examining board of appellant was legally sufficient to sustain its order in the premises. The identical question was involved on the hearing of the matter in the lower court; and preceding the rendition of its judgment that court rendered its written opinion therein. In the main, that opinion constitutes a correct and adequate expression of the opinion of this court in the matter of the instant appeal; and, to the extent hereinafter set forth, is hereby adopted by this court as its opinion herein. That part of said opinion is as follows, to wit:

"The acts charged against petitioner as disclosed by the record before the court consist of employing an unlicensed practitioner for treatment of the sick or afflicted and the aiding or abetting of an unlicensed person to treat the sick or afflicted.

"The evidence discloses that petitioner at the time of the alleged offenses was the manager of a corporation running a

so-called health center or institution for the treatment of the sick and afflicted, in which capacity it was his duty to employ and he did employ and discharge physicians and assistants who were paid for their services by the corporation. In the instant case two women were treated by the institution under written contracts entered into with the corporation. Among the employees was an Indian known as Chief Thunder Cloud. The Chief was an entertainer, lecturer, and instructor in Indian dancing and hygiene, and was also after a fashion a masseur, having gained some knowledge of the practice of massage among the members of his tribe. He was employed by the petitioner as an entertainer during a course of lectures which petitioner was giving to the Friday Morning Club of Los Angeles. During this course of lectures Chief Thunder Cloud gave some instruction to his audiences as to the proper manner in which to walk, as well as instruction in Indian dance steps. Following this course of lectures he was retained by the health institute as a masseur. He brought to the institution some herbs prepared in the form of pills. These he turned over to the institute in order that they might be prescribed and sold by the physicians. There is evidence that he himself recommended the use of these pills to patients who testified at the hearing and that he received several dollars therefor. He gave massage to two female patients and some sort of manual treatment which seems to have been designated as 'brain vibrations'. One of the patients testified that the Chief twisted her neck causing the vertebrae to snap, while the other one testified that he pounded her up and down the spine. These treatments, it appears, were given while the patients were seated in chairs. He looked into the eyes of one of the patients who was suffering from eye trouble and, as she testified, informed her that her eyes could be cured. At the same time these treatments were being administered the patients were also receiving treatment from a physician in the organization who gave them spinal adjustments upon an operating table designed for that use.

"It may be noted that the Chief denied having administered any treatment except the simple massage that he had learned among his own people, where it had long been used. This conflict in the testimony must necessarily be resolved in favor of the testimony of the women who re-

ceived the treatments, and being taken as true for the purposes of this proceeding, the acts testified to will be regarded as a violation of the Medical Practice Act. Careful reading of the testimony fails to disclose any evidence of the following facts: that Chief Thunder Cloud was employed to perform, or was instructed to perform, any acts or to give any treatment other than simple massage of the patients entrusted to him for that purpose; that he was ever instructed to prescribe or deliver or sell any herbs or pills; that petitioner had any knowledge or information to the effect that the Chief had administered any treatment by way of spinal adjustments or otherwise, or that the petitioner had any knowledge or information that the Chief had prescribed, delivered or sold any of his herbs or pills. There is likewise no evidence that he was employed to diagnose the ailments of patients or that petitioner had any knowledge that he would diagnose or had diagnosed any such ailments.

"It appears from the evidence that the Chief gave the petitioner a sample massage treatment before he was allowed to operate upon patients and that it was this treatment that was prescribed for the patients whom he afterwards served. Patients were turned over to him to receive massage, and not with the understanding or instruction that they were to receive spinal adjustments or any other treatment.

"A case is thus presented where one employed by a physician to render services not constituting medical treatment voluntarily and without the knowledge or instruction of his employer goes a step beyond his proper duties and performs acts that are prohibited by the statute regulating the practice of medicine. If, under these circumstances, the license of the employing physician is properly revoked the ruling of the board in revoking Dr. Barrett's license must be sustained. If the contrary is true the order of the board should be annulled. There is no evidence in the record tending to show that the masseur in question was employed to render any treatment for the sick or afflicted. It is not contended that simple massage constitutes such treatment. The Statute Act 4807 (1913 as amended), section 14, subdivision 7a, defines unprofessional conduct in part as 'aiding or abetting any unlicensed person to practice any system or mode of

treating the sick or afflicted'. The use of the words 'aiding' and 'abetting' in the disjunctive, if the statute is to receive literal interpretation, would permit the conviction of a physician who had no knowledge that his employee was doing acts in violation of the law. The word 'aid' imputes no knowledge or notice of the unlawful act or purpose, whereas the word 'abet' presupposes a guilty knowledge upon the part of the one accused. ■ It is clear that the statute should not be given such an interpretation as would admit of the conviction of one who has no guilty knowledge or wilful intent respecting the commission of the prohibited act. Such construction manifestly would be utterly unreasonable and would render the provision nugatory, as an unwarranted and arbitrary assumption of legislative authority. If such had been the intention of the legislature the word 'abet' would not have been used at all and while it cannot be assumed that the terms were intended to be used in the conjunctive, it must be assumed that it was not the intention of the legislature to make the mere 'aiding' in the act a violation of the law unless such aid be wrongfully and knowingly extended.

■ "The right to practice medicine, once granted, becomes a property right which cannot be taken away except for reasons which supply at least some reasonable grounds for believing that the one who has been licensed is no longer fit to continue in the practice. The legislature has the unquestioned right to prescribe the grounds upon which a license may be revoked, but that right is not wholly uncontrolled and does not extend so far as to authorize the legislature to prescribe grounds for revocation which are capricious and bear no relation to the matter of qualification of the licensee or to the proper conduct of his professional duties. It is no less the duty of a board, vested with authority to revoke the license of a physician for misconduct, to protect from unwarranted charges those who are not guilty than it is to condemn and punish those who are guilty of misconduct consisting of a violation of their professional duties prescribed by statute. There can be but one reasonable interpretation of the act as applied to the facts before the court, namely, that a violation of the law by an employee without the knowledge or consent and against the ex-

press instructions and wishes of the employer, furnishes no ground for the revocation of the latter's license.

"It appeared to the court from a reading of the transcript of testimony that the board overlooked the fact that the employee in question was not hired to perform acts which he was not licensed or qualified to perform, and that they further overlooked the fact that knowledge of these unlawful acts was not brought home to the petitioner in such manner as to impute to him consent to or acquiescence therein. It must be assumed that the board understood the evidence to be sufficient to supply these necessary facts for it is not conceivable that the members of the board believed that they had the right or that it would be proper to make an order adverse to the petitioner in the absence of evidence of guilty knowledge upon his part. Such an adverse ruling, of course, would place in jeopardy the licenses of the most conscientious and ethical members of the profession, since it would declare liability upon their part for the unauthorized, voluntary and furtive acts of their employees."

The judgment from which the instant appeal is taken is affirmed.

Conrey, P. J., and York, J., concurred.