[No. B061733. Second Dist., Div. Two. Feb. 5, 1993.]

HAMEED A. KHAN, Plaintiff and Appellant, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Dale L. Grimm for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Stephen A. Mills, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**NOTT, J.**—Appellant Hameed A. Khan, M.D., brings this appeal following the denial of his petition for writ of administrative mandamus. (Code Civ.

Proc., § 1094.5.) The superior court ruled in favor of respondent Division of Medical Quality of the Medical Board of California after the court reviewed the findings of a panel comprised of members of the Eleventh District Medical Quality Review Committee.[1] The panel found that appellant had violated sections 2271[2], 2234[3] and 2266[4]. Appellant's approval to supervise physician's assistants was revoked. His physician's and surgeon's certificate was also revoked, but the revocation was stayed for three years during which time appellant was placed on probation.

Appellant contends, among other things, that intent is an element of all three code sections under which he was disciplined. We hold that the language of each section clearly and unambiguously permits the discipline of a medical practitioner without a showing of intent, and we affirm the judgment.

FACTS

Appellant acquired his California medical license in 1977. In March of 1982, he purchased a practice known as "South Torrance Medical Group." At that time, he anticipated that his sister, Anisa Khan, who was licensed to practice medicine in Pakistan, would join him in his practice. Ms. Khan came to the United States and was to begin a residency program in early 1982 as part of the requirements to obtain a license to practice in California. She later decided not to join the residency program and consequently never received her California license. Sometime before she changed her mind, appellant had a sign made for his clinic which listed Anisa Khan, M.D., as a medical doctor working there. That sign was on the door to the entrance of suite 101, appellant's clinic at 3500 Lomita Boulevard in Torrance, when an

---

[1]The state is divided into 14 districts for purposes of the Medical Quality Review Committees, and the Eleventh District consists of Los Angeles County. (Bus. & Prof. Code, § 2322.) All subsequent statutory references are to the Business and Professions Code unless otherwise indicated.

[2]"Any advertising in violation of Section 17500, relating to false or misleading advertising, constitutes unprofessional conduct." (§ 2271.) Section 17500 states, in pertinent part: "It is unlawful for any person . . . with intent . . . to perform services, professional or otherwise, . . . to make or disseminate or cause to be made or disseminated before the public in this state, . . . any statement, concerning such . . . services . . . or concerning any circumstance or matter of fact connected with the proposed performance . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should have been known, to be untrue or misleading."

[3]Section 2234 lists examples of professional misconduct, including "(a) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provision of this chapter."

[4]"The employing, directly or indirectly, the aiding, or the abetting of any unlicensed person . . . to engage in the practice of medicine or any other mode of treating the sick or afflicted which requires a license to practice constitutes unprofessional conduct." (§ 2264.)

investigator from the California Medical Board went there on September 9, 1986. In addition, the building directory listed Anisa Khan, M.D. as a doctor working in suite 101.

The sign on the door of appellant's office also listed William Mar as a "P.A. - C."—a physician's assistant certified. The parties stipulated that Mr. Mar was never licensed as a physician's assistant in California.

On September 4, 1985, a patient named Diane H. went to appellant's clinic complaining of nausea and vomiting, pain in her ribs, shortness of breath and no food intake for three days. She was treated by Mr. Mar, who performed an examination, ordered a urinalysis but failed to interpret it properly, misdiagnosed her as having gastroenteritis, gave her an injection of antivomiting medication and advised her to return in a week. In fact, the patient was critically ill due to the onset of diabetes, and she required an emergency admission to the hospital the next day.

On June 12, 1986, California Medical Board special investigator Kathleen Pattee, using the name of Kay Silva, went to Dr. Khan's clinic and was treated by Mr. Mar. He took her blood pressure, noted it on her chart and informed her that her pressure was normal. She returned to the clinic on July 8, 1986, and complained of vomiting and diarrhea. Mr. Mar examined her mouth, ears, stomach and lower abdomen. He said that he wanted to take a blood test, and an unidentified female employee took blood from her finger. He subsequently diagnosed Ms. Pattee as being anemic and stated that he wanted to take X-rays. He gave her a kit for fecal samples and told her to return the next day. She declined his request to perform a rectal examination. He told her to drink milk and that she might have some irritation in the colon or the stomach. Mr. Mar entered on her chart a hemoglobin count of 8.1, which, if accurate, would indicate a serious medical problem that he failed to notice. The basis of Mr. Mar's diagnosis of anemia was neither documented on the chart nor indicated by the examination results.

CONTENTIONS

Appellant contends that (1) the trial court erred in failing to issue a statement of decision though one was timely requested, (2) the trial court made inconsistent findings that are not supported by the record, (3) section 2264 prohibits only the aiding and abetting of an unlicensed person to practice medicine, (4) section 2264 requires scienter, (5) sections 2271 and 17500 require proof of intent to deceive, and (6) he is being disciplined for uncharged offenses in violation of due process.

DISCUSSION

1. *The Trial Court Properly Denied Appellant's Untimely Request for a Statement of Decision*

Code of Civil Procedure section 632 requires the trial court to issue a statement of decision upon the request of any party. The request must be made within 10 days after the court announces a tentative decision "unless the trial is concluded within one calendar day . . . in which event the request must be made prior to the submission of the matter for decision."

██ In this case, the hearing on appellant's petition was held on August 14, 1991, and concluded that same day. After the trial court denied the petition, counsel for appellant requested a statement of decision. The court denied the request on the ground that it was not timely.

While, as appellant argues, the failure to prepare a statement of decision which has been requested by a party is reversible error (*Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 127 [285 Cal.Rptr. 586], review den.), it is only error when there is a timely request. (*In re Marriage of Katz* (1991) 234 Cal.App.3d 1711, 1718 [286 Cal.Rptr. 495].) Since appellant failed to comply with the statutory requirement by failing to request the statement of decision prior to the matter being submitted, he cannot claim the denial of the request was error.

██ Appellant also seems to be arguing that the trial court erred because it failed to grant respondent's written request for a statement of decision, which the trial court found to be "defective." However, appellant has no standing to assert error with respect to the rights of respondent. (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1179 [217 Cal.Rptr. 89], cert. den.) Respondent has not challenged denial of its motion by the trial court and, therefore, the issue will not be addressed herein.

2. *The Trial Court's Findings Are Supported by the Record and Any Misstatement in the Minute Order Was Harmless*

██ We review the record for substantial evidence and focus on the findings made by the trial court, not the administrative agency. (*James v. Board of Dental Examiners* (1985) 172 Cal.App.3d 1096, 1106 [218 Cal.Rptr. 710].) Where, due to the fault of the parties rather than trial court error, no statement of decision was issued, we presume in support of the judgment each favorable finding of fact supported by the evidence. (See

*Beehan* v. *Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 861 [137 Cal.Rptr. 528]; *Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 496 [138 Cal.Rptr. 725], cert. den.) Statutory interpretations present questions of law that are reviewed by the court de novo. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *People* ex rel. *Fund American Companies* v. *California Ins. Co.* (1974) 43 Cal.App.3d 423, 431 [117 Cal.Rptr. 623].)

■ The minute order states, inter alia: "The court finds that [appellant] was in violation of Business and Professions Code Sections 2264 and 17500 in the employment of Kahn and Mar. [¶] The Court further finds that the decision of the respondent is supported based upon the weight of the evidence." Appellant correctly notes that the panel did not find that appellant employed Ms. Khan to practice medicine and therefore did not violate section 2264 on that ground. He contends, therefore, that the trial court's two statements are inconsistent.

To some extent, appellant is correct. However, the panel did find a violation of section 2264 in the employment of Mr. Mar, and the court's finding that the decision of the panel is supported by the record is likewise supported by substantial evidence. ■ We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result. (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876 [7 Cal.Rptr.2d 277], review den., citing *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], cert. den.) Clearly, that is not the situation here. ■ Substantial evidence supports the finding that appellant violated section 2264, and no reversal is warranted on this record.

The same analysis applies to the contention that section 17500 prohibits false advertising and not employment. There is sufficient evidence to support the trial court's judgment that the panel's finding of a violation of section 17500 by appellant was supported by the weight of the evidence at the administrative hearing. That is, Ms. Khan was never licensed to practice, nor was Mr. Mar a "P.A. - C." as advertised. Therefore, no result more favorable to appellant would occur upon reversal, and reversal is therefore not required. (*In re Jonathan B., supra,* 5 Cal.App.4th at p. 876.)

3. *Section 2264 Does Not Merely Prohibit the Aiding and Abetting of an Unlicensed Person to Practice Medicine*

■ Appellant contends that the finding that he violated section 2264 must be reversed because the evidence does not establish that he aided or

abetted Mr. Mar to engage in the practice of medicine without a license. He further contends that employing Mr. Mar, without a finding of aiding and abetting, was not a violation of the statute and, on that basis, the finding that he violated section 2264 must be reversed.

■ The fundamental rule of statutory construction is that the court determine the intent of the Legislature to effectuate the purpose of the law. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 607 [224 Cal.Rptr. 631, 715 P.2d 590].) In determining such intent, the court turns first to the words of the statute. (*Ibid.*) We are required to give effect to statutes according to the usual, ordinary import of the language used in them. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Significance should be given to every word of an act in pursuance of the legislative purpose, and construction making some words surplusage is to be avoided. (*Ibid.*) Where the language is clear, there can be no room for interpretation. (*Regents of University of California* v. *Public Employment Relations Bd., supra,* 41 Cal.3d at p. 607.)

■ Section 2264 prohibits as unprofessional conduct "[t]he employing, directly or indirectly, the aiding, or the abetting of any unlicensed person . . . to engage in the practice of medicine . . . ." The language of the statute is unambiguous. What is prohibited is either the employment or the aiding or the abetting of any unlicensed person. No other reading would make sense. Certainly appellant's interpretation is unacceptable, as it would render superfluous the words "employing, directly or indirectly" and would limit the transgression to aiding and abetting only.

Our interpretation is supported by *Newhouse* v. *Bd. of Osteopathic Examiners* (1958) 159 Cal.App.2d 728 [324 P.2d 687]. The charge against the physician in *Newhouse* was that he "did aid or abet" an unlicensed person to assist "in suturing" a patient. The question before the court was whether one instance of assistance by the unlicensed person was aiding and abetting within the meaning of the statute, former section 2392, which is now section 2264. The former statute read: "The employing, directly or indirectly, of any suspended or unlicensed practitioner in the practice of any system or mode of treating the sick or afflicted or the aiding or abetting of any unlicensed person to practice any system or mode of treating the sick or afflicted constitutes unprofessional conduct within the meaning of this chapter." The *Newhouse* court stated: "Examining the statute we find that the *first prohibition is against the employment of an unlicensed person* . . . ." (159 Cal.App.2d at p. 734, italics added.) It seems that the phrase in section 2264 "to engage in the practice of medicine or any other mode of treating the sick

or afflicted which requires a license to practice" replaced "in the practice of any system or mode of treating the sick or afflicted" in section 2392. Also, the Legislature condensed section 2264 by omitting the second repetition of the above quoted phrase. In so doing, the words "the aiding, or the abetting" were moved up to follow "[t]he employing, directly or indirectly." The Legislature did not, however, amend the section to nullify the conclusion reached by *Newhouse*, and we find it applicable to the present case. The statutory language makes clear that section 2264 may be violated either by employing or by aiding or abetting.

Appellant cites *Barrett* v. *Board of Osteopathic Exmrs.* (1935) 4 Cal.App.2d 135 [40 P.2d 923], which interpreted the section of the Medical Practice Act that preceded section 2392 and contained substantially the same language: "Employing directly or indirectly any suspended or unlicensed practitioner in the practice of any system or mode of treating the sick or afflicted or the aiding or abetting any unlicensed person to practice any system or mode of treating the sick or afflicted." (Stats. 1921, ch. 598, § 14, subd. 7(a). p. 1015,) The *Barrett* court stated that there was no evidence that the unlicensed person in that case was "employed to render any treatment for the sick or afflicted." (4 Cal.App.2d at p. 138.) Therefore, the court had to determine whether, alternatively, the revocation of the license of the medical practitioner could be sustained on the theory that he aided or abetted the unlicensed practitioner in giving treatments. (*Ibid.*)

*Barrett* does not hold that the Legislature intended that aiding or abetting is requisite to a violation of section 2264, as appellant argues. The court engaged in an analysis of the record under all parts of the code section in order to determine whether it could uphold the license revocation. As it happened, the court found that the evidence did not support a finding of intent which was required in order to affirm under an aiding or an abetting theory. (4 Cal.App.2d at p. 140.) However, *Barrett* does not compel reversal in this case, where the evidence strongly supports the finding that appellant employed Mr. Mar to engage in the practice of medicine, and there is no need to rely on an aiding or abetting theory to affirm the trial court's ruling.

### 4. *Section 2264 Does Not Require a Showing of Guilty Knowledge or Intent*

Appellant also contends, apart from the aiding or abetting argument, that section 2264 requires knowledge on the part of the practitioner that the person hired is unlicensed. The argument incorporates appellant's administrative hearing testimony that he learned about physician's assistants from a colleague whom had previously employed Mr. Mar. He liked the idea of

physician's assistants and subsequently interviewed Mr. Mar, whom he found to be a "good boy." Appellant received Mr. Mar's papers, one of which was a "certification from some authority" that contained "certain words say[ing] that he was certified as a physician assistant." Appellant turned the paperwork over to his former office manager, who assured him that the papers were in order. He hired Mr. Mar and found him to be such a good worker that it never occurred to him that Mr. Mar could be unlicensed.

Based on that testimony, appellant contends that he was misled into believing that Mr. Mar was licensed and that he had no knowledge of the true facts. His argument implies that he had no obligation to ascertain the true facts but was entitled to rely on the statements of others, including Mr. Mar. This is the ground for his contention that he was erroneously found to have violated section 2264 under a "strict liability" theory.[5]

We begin, once again, with the principle that we must determine the intent of the Legislature to effectuate the purpose of the law. (*Regents of University of California* v. *Public Employment Relations Bd.*, *supra*, 41 Cal.3d 601, 607.) ██ Moreover, the various parts of a statutory enactment must be harmonized by considering the particular section in the context of the statutory framework as a whole. (*Moyer* v. *Workmen's Comp. Appeals Bd.*, *supra*, 10 Cal.3d 222, 230.)

██ The "manifest object" of section 2264 is "the protection of the public from certain forms of treatment by unlicensed, and presumably unqualified persons." (*Newhouse* v. *Bd. of Osteopathic Examiners*, *supra*, 159 Cal.App.2d 728, 734.) Section 2264 evidences the Legislature's determination that one way to provide that protection to the public is by requiring licensed practitioners to only employ other licensed persons to treat patients. The question is the extent of the responsibility placed on the practitioner by the Legislature.

Section 2264 is part of article 12 of the chapter of the Business and Professions Code devoted to medicine. Section 2220, also part of that article, empowers the Division of Medical Quality to regulate medical practitioners. Section 2234 permits the division to take action against a licensee charged with unprofessional conduct, which includes "(a) Violating or attempting to violate, directly or indirectly, or assisting in or abetting the violation of, or conspiring to violate, any provision of this chapter." Unprofessional conduct, therefore, includes a violation of section 2264 by employing an unlicensed person to engage in the practice of medicine. Neither section 2234 nor 2264

---

[5]Indeed, in closing argument, counsel for respondent advised the panel that section 2264 is "essentially a strict liability type of offense."

contains qualifying words such as knowingly or intentionally, though such words are used in other sections of article 12. (E.g., §§ 2250 ["willful failure to comply"], 2256 ["intentional violation" of certain sections of the Welf. & Inst. Code], 2261 ["knowingly making or signing"] and 2263 ["willful, unauthorized violation of professional confidence"].) The Legislature's failure to include "knowingly" or "intentionally" or other qualifying words signals that it did not intend either guilty knowledge or intent to be elements of the unprofessional conduct of violating section 2264 by employing an unlicensed person. (See *In re Marley* (1946) 29 Cal.2d 525, 529 [175 P.2d 832], quoting and apparently following 68 C.J., §§ 24 and 25, pp. 165-166; *Brodsky* v. *Cal. State Bd. of Pharmacy* (1959) 173 Cal.App.2d 680, 688 [344 P.2d 68]; *People* v. *Telfer* (1991) 233 Cal.App.3d 1194, 1201 [284 Cal.Rptr. 913].)

This interpretation of the words of the statute is supported by its purpose, which is protection of the public. If appellant, a practicing doctor for more than 30 years who was characterized by the panel as "an astute man," can claim that he could not tell from the paperwork whether Mr. Mar was licensed, what hope is there for the average person seeking medical care? It is the responsibility of the medical practitioner to contact the licensing agency and ensure the existence of the license of those in his or her employ. That is the apparent and reasonable intent of the Legislature. Otherwise, practitioners could protect themselves from discipline by the Medical Board by remaining ignorant of the true facts. Appellant has taken such a position in this case. However, our adoption of appellant's argument would not further the Legislative purpose of public protection. We therefore hold that section 2264 does not require a showing of either knowledge or intent on the part of the practitioner.

To the extent that appellant relies on *Barrett* v. *Board of Osteopathic Exmrs., supra,* 4 Cal.App.2d 135, to support this contention, his reliance is misplaced. As earlier noted, the *Barrett* court found that the practitioner did not hire the unlicensed person to treat patients. Appellant, on the other hand, employed Mr. Mar as a physician's assistant.

### 5. *Sections 2271 and 17500 Can Be Violated Through Negligence*

Appellant contends that the finding that he engaged in false advertising must be reversed on the ground that the placing of the names of Ms. Khan and Mr. Mar on his door was done out of a mistake of fact, which

disproves any criminal intent. Accepting for the sake of argument that appellant established mistake of fact in his defense, he has not established that the finding must be reversed.

Violation of section 17500 is a misdemeanor.[6] Even though section 17500 is a criminal statute, it falls within the category of offenses known as public welfare offenses which do not require criminal intent. (*People* v. *Martin* (1989) 211 Cal.App.3d 699, 713 [259 Cal.Rptr. 770 [86 A.L.R.4th 383], review den.) Pursuant to section 17500, it is unlawful to make or cause to be made with the intent to perform services a public statement concerning any circumstance or matter of fact "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Therefore, sections 17500 and 2271 can be violated through negligence.

As established earlier, appellant had the responsibility to assure that Mr. Mar was licensed. His failure to do so was a breach of reasonable care. Had he met his duty of reasonable care, he would have learned that Mr. Mar was unlicensed. With respect to Ms. Khan, there is no question about appellant's knowledge. He knew for a fact that Ms. Khan was not licensed, yet he permitted her name to be on his door and listed in the lobby as a doctor practicing in his clinic. Therefore, the evidence supports the finding that appellant violated section 17500, and violated section 2271 thereby.

### 6. *Appellant Received a Fair Hearing*

Appellant's final argument is that he was denied a fair trial because some of the findings made by the panel were not charged in the accusation and "therefore cannot be the subject of discipline."[7] Because appellant was not disciplined on the basis of any of the findings of which he complains, he has failed to establish a ground for the conclusion that his hearing was unfair. Our analysis of appellant's other contentions shows that the evidence supports the trial court's conclusion that appellant employed an unlicensed person and falsely advertised unlicensed persons as being licensed. He was disciplined solely for these two violations of professional conduct. This case is distinguishable from *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522 [192 Cal.Rptr. 693], on which appellant relies. The *Wheeler* court found that discipline had been imposed on grounds not charged in the accusation and furthermore not supported by the evidence. The opposite is true in this matter, and appellant's assertion of error has no basis.

---

[6]Violation of section 2271 "constitutes unprofessional conduct" but is not a misdemeanor.

[7]The findings referred to by appellant include, among others, (1) the records of patients seen by Mr. Mar were missing, poorly documented and not signed; and (2) that appellant failed to obtain backup coverage by a licensed physician during periods of vacation or absence from his office.

## Disposition

The judgment is affirmed. Respondent's request for frivolous appeal sanctions is denied. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)

Boren, P. J., and Fukuto, J., concurred.