Filed 1/30/24  Stahl v. Cross CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| BRIAN STAHL et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>FENN CROSS, as Personal Representative, etc., et al.,<br><br>  Defendants and Respondents. | D081095, D081995<br><br><br>(Super. Ct. No. 37-2020-00005564-CU-BT-CTL) |
| FENN CROSS, as Personal Representative, etc.,<br><br>  Cross-complainant and Respondent,<br><br>  v.<br><br>BRIAN STAHL et al.,<br><br>  Cross-defendants and Appellants. | |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Affirmed.

Webb Law Group, Lenden F. Webb; Worthington Law, and Brian P. Worthington, for Plaintiffs, Cross-defendants, and Appellants.

Gupta Evans & Ayers, Ajay Gupta, Jacob A. Ayres, and Aurora Gallardo, for Defendants, Cross-complainants, and Respondents.

After a bench trial, the superior court found, among other things, that Fenn Cross as personal representative of the Estate of Terry M. Cross successfully brought a cross-complaint as a derivative action on behalf of the Range of Motion Products, LLC (Company).[1] In this consolidated appeal, Brian Stahl, Nic Bartolotta, All Together Assets, LLC (ATA), and the Company (Stahl, Bartolotta, ATA, and the Company collectively Appellants) challenge only that finding, arguing the trial court erred in construing the cross-complaint as a derivative action and awarding nominal damages to the Company. To this end, Appellants contend the cross-complaint was an individual action only.

We are not persuaded by Appellants' arguments; thus, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In this matter, Appellants raise a single issue: Whether the trial court erred in construing the second amended cross-complaint as a derivative action on behalf of the Company. Appellants do not dispute any of the trial court's factual findings regarding liability. Nor do they raise any substantial evidence challenge whatsoever. As such, the underlying facts of the various disputes between the parties are not particularly germane to our resolution of the issue presented. Thus, there is no need for a robust discussion of the

---

[1] To avoid confusion, we shall refer to Fenn Cross as Fenn, Terry Cross as Terry, and the estate of Terry M. Cross as Estate. Also, there is an additional respondent in this matter, the Armaid Company. When necessary, we shall refer to Fenn and the Armaid Company together as Respondents.

facts, and we shall provide a brief factual background, to provide context, taken primarily from the detailed statement of decision.

This case arises from a dispute between members of the Company. The Company's voting members were Stahl, Bartolotta, ATA,[2] and Terry. The members formed the Company in 2016 by entering into an Operating Agreement (Agreement) to promote, sell, and market the Rolflex, a self-massage therapy device that Terry invented. Per the Agreement, Terry assigned all of his intellectual property in the Rolflex to the Company in exchange for a $345,000 inventor's fee.

The Agreement provides that its members may engage in their own business activities: "During the term of the Company, each Member may engage in any business activity for his own profit or advantage without the other Members' consent." Under section 4.5, the Agreement also provides that each member owes a fiduciary duty not only to the Company but to the other members as well.

In section 2.6 of the Agreement, it states: "No Member shall lend or advance money to or for the Company's benefit without all of the other Member's prior written consent." Similarly, section 4.2 of the Agreement lists a variety of "Major Decisions" that require written approval of all members. Included in that list is "[c]ausing or allowing the Company to accept a loan from any Member."

At the time Terry signed the Agreement, he owned and operated the Armaid Company. From 1999 through January 2020, the Armaid Company sold a product called Armaid1, a device designed to massage the arms.

---

2 ATA is a California limited liability company, and Stahl serves as its manager.

3

Soon after the Agreement was executed, a dispute arose between the members. Stahl and Bartolotta demanded that Terry forfeit 10 percent of his interest in the Company and "take a back seat" within the Company or Stahl would leave. Apparently, Stahl and Bartolotta needed some of Terry's equity in the Company to raise capital. Terry agreed to forfeit a portion of his ownership of the Company, and Stahl made a $30,000 loan to the Company at 10 percent interest. All voting members agreed in writing to Stahl's loan.

However, Stahl and Bartolotta were not finished obtaining loans for the Company. In all, they obtained over $500,000 in loans to the Company that were not approved by Terry as required under the Agreement. The lenders included Stahl, ATA, and Jambri Investments, LLC (Jambri) (a company controlled by Stahl and his ex-wife).

Additionally, another dispute arose between Appellants and Terry when Terry showed Stahl drawings for the Armaid2. Terry told Stahl he was seeking a patent for an upgraded Armaid1. Stahl, however, was concerned about possible patent infringement with the Rolflex.

To address Stahl's concerns, Terry contacted a patent attorney to ask her to determine whether Armaid2 would infringe on the expected Rolflex patent. The patent attorney sent a memorandum to Terry and Stahl that inferred that the Armaid2 did not appear to infringe on the pending Rolflex patent. She also recommended that the parties reach an agreement regarding having both the Armaid2 and the Rolflex on the market. The parties could not reach any such agreement.

Terry continued to develop the Armaid2 and ultimately filed a provisional utility patent in March 2019. The Company then sent a cease-and-desist letter to Terry and the Armaid Company claiming the Armaid2 infringed on the Rolflex design patent. When Terry did not agree to stop the

4

development of Armaid2, Appellants filed suit against Terry.[3] The complaint included seven causes of action primarily based on Terry's attempts to develop and market the Armaid2.[4]

Terry filed a cross-complaint against Appellants and the Company that included three causes of action.[5] Before the matter preceded to trial, Terry dismissed all causes of action except for his breach of contract claim. The gravamen of that cross-complaint was that Appellants and the Company breached multiple provisions of the Agreement by facilitating unauthorized insider loans and breaching their fiduciary duties.

A bench trial began on December 13, 2021, and, after a settlement conference was held on December 14, the trial preceded on December 15, 16, 20, and 21. The court then continued the trial until January 5, 2022.

Unfortunately, Terry unexpectedly passed away during the continuance. On January 5, 2022, the trial court expressed concern about the status of the litigation following Terry's death. Appellants' counsel stated that Appellants needed to amend their complaint, and the cross-complaint would need to be amended as well. Ultimately, the court agreed and ordered

---

[3]    Appellants later added the Armaid Company as a Doe defendant.

[4]    In April 2021, the Company filed a patent infringement suit in the United States District Court of the District of Maine where they sought an injunction to restrain Armaid from selling the Armaid2. The District Court denied the Company's request for a preliminary injunction. The Company subsequently dismissed its federal suit. The trial court below stated it did not rely on the District Court's rulings for its determinations in the statement of decision. In April 2022, the Company filed a second patent infringement suit in federal court.

[5]    Terry filed a first amended cross-complaint three days after filing the original cross-complaint.

"that counsel serve and file an amended complaint and serve and file an amended cross-complaint if you think you're going to amend the Cross-Complaint."  The court informed the parties that any amended complaint or cross-complaint "should conform to what the evidence has presented so far" and be filed by the next hearing date (February 10).

Appellants' counsel then asked the court if the amended pleading "would be to address the derivative issues?"  That question led to the following exchange:

> "THE COURT:  Counsel, you can't see me. I'm smiling underneath the mask.  I didn't even get to that issue.  I just—you know the legal issues are kind of intense because I'm not sure if the fiduciary duty in your Complaint survives and go to the representative.  I don't know the answer to that.

> "[Appellant's counsel]:  So just amend to make sure we're suiting the facts as best we can.

> "THE COURT:  Right, yes.

> "[Terry's counsel]:  Well, Your Honor, I think what [Appellants' counsel] is trying to get at is the derivative action.  I think that the Court is trying to get at is you want the parties to amend the Complaint to essentially add [Terry's] estate to the pleadings. And I think [Appellants' counsel] is trying to get at is adding [the Company] as a party to the Complaint, and that's something that isn't really at issue in the court.  The only reason we're really having this discussion is because of [Terry's] death. And I'm not trying to—

> "THE COURT:  No, I know.  And that would be – yeah, there's so many legal issues with that because it's like it is—I mean, it's—[Terry's] death has disadvantaged both sides.  There's no advantage to be gained by any party.  They have lost a lot of causes of actions if they don't survive.  You have lost—I don't know whether the legal representative can bring [Terry's] complaint—Cross-

6

Complaint. I don't know the answer to this, folks, I have not done the legal research. I need some more direction. [¶] . . . [¶] . . . . So, I mean counsel, they have a right— during the trial, you can amend your pleadings to—

"[Appellants' counsel]: Conform to proof.

"THE COURT: Conform to proof. So, I mean, if they amend and they add [the Company] and you want to argue or file a demurrer or whatever, you're welcome to do so. . . . [¶] Okay. So all amendments to complaints need to be filed by February 10th at 1:30 to conform to proof."

Appellants' timely filed a first amended complaint; a second amended cross-complaint was timely filed, purporting to substitute the Estate through its personal representative Fenn in place of Terry. In the first amended complaint, Appellants sought to add the Company as a plaintiff and sought damages on its behalf.

Appellants then filed a memorandum of points and authorities regarding amending the complaint according to proof, specifically addressing the propriety of including the Company as a named plaintiff. There, they argued the Company should be added as a plaintiff because it was already named as a cross-defendant, the amendment was based on the same facts already alleged and would not prejudice the Estate or Fenn.

The Estate filed an opposition to Appellants' memorandum of points and authorities, arguing that, in Terry's trial brief, he had pointed out that Appellants lacked standing and that the Company was the real party in interest. Moreover, the Estate emphasized that the trial court had previously highlighted Appellants' standing issues. And the Estate maintained it would be prejudiced by Appellants' proposed amendment so late in the litigation.

7

In a minute order dated February 15, 2022 (and subsequently amended on February 17), the trial court denied Appellants' motion to amend the complaint to add the Company as a plaintiff. The court explained:

> "Clearly, [Appellants] have delay[ed] in bringing this amendment. The court inquired months ago as to whether this was a derivative action or an individual action. [Appellants] announced a personal action. In fact, [Appellants] filed a brief explaining their choice of action in this case. . . .

> "The Court further finds that allowing such an amendment is highly prejudicial to [Respondents'] defense of this . . . action. The whole of [Respondents'] defense is that [Appellants] do not have standing and/or separate damages to allow [Appellants] to maintain or prevail on an individual action as opposed to a derivative action. This proposed amendment would fundamentally change the overall theory of this case."

The court then made clear that the first amended complaint, filed on February 8, 2022, was denied by the court, and the original complaint would remain the operative complaint.

Appellants then filed a petition for a writ of mandate in this court, arguing: (1) the trial court erred in denying the filing of the first amended complaint to the extent it added Fenn as the named defendant in place of Terry, and (2) the trial court abused its discretion by denying Appellants' attempt to add the Company as a plaintiff. On April 8, 2022, we informed the parties and the trial court that we were considering issuing a preemptory writ of mandate regarding Appellants' claim that the trial court erred in denying Appellants' request to substitute in Fenn as the personal representative of the Estate in place of Terry as the named defendant. We further stated that if the court chooses to change its order and allow Appellants' to substitute Fenn in place of Terry as the named defendant, we

8

would dismiss the aspect of the petition challenging the denial of the request to substitute Fenn. We did not address Appellants' claim as to the adding of the Company as a plaintiff.

In a minute order dated April 12, 2022, the trial court denied/struck the first amended complaint, except to substitute Fenn as the personal representative of the Estate in place of Terry.[6]

The trial resumed on April 12, 2022. At the conclusion of evidence, the court granted a motion for a directed verdict as to the Armaid Company. After closing arguments, the court requested additional briefing on two issues: the Estate's standing only as it related to Terry's death and the remedies applicable for breach of a contract as to the second amended-cross-complaint.

In its brief addressing the Estate's standing, Appellants maintained the second amended cross-complaint could not be a derivative action because the operative cross-complaint did not satisfy the requirements of Corporations Code section 17709.02. That statute requires the cross-complainant to be a member of the limited liability company at the time of the alleged injury and remain a member throughout the litigation of the derivative claim. (Corp. Code, § 17709.02, subd. (a)(1); *Sirott v. Superior Court* (2022) 78 Cal.App.5th 371, 381-382.) The cross-complainant must also allege with particularity its

---

[6] This court subsequently dismissed Appellants' petition for writ of mandate as moot regarding the denial of leave to amend to substitute Fenn as the personal representative of the Estate in place of Terry. In addition, we denied the petition as to the challenge to the denial of leave to amend to add the Company as a plaintiff.

efforts to demand that the limited liability company pursue the action or its reasons for not doing so. (Corp. Code, § 17709.02, subd. (a)(2).)[7]

The court then issued a proposed statement of decision. There, the trial court found that the Estate had standing to proceed with the cross-complaint and concluded that the Estate was seeking a derivative action on behalf of the Company. Appellants objected to the proposed statement of decision only to the extent that the trial court relied on the district court's denial of the Company's request for a preliminary injunction in the federal patent infringement case. Appellants did not object or otherwise address the court's conclusion that the cross-complaint was a derivative action.

Seven days later, the trial court issued the statement of decision, which was substantially similar to the proposed statement of decision. In that statement, the court found that Appellants had not carried their burden to prove that the Estate was liable regarding any of the alleged claims in the operative complaint.[8] The court also concluded that the Estate had standing to pursue the cross-complaint. Moreover, the court explicitly addressed Appellants' claim that the Estate could not maintain a derivative action. In rejecting Appellants' arguments, the court found that the Estate held a continuous ownership in the Company, first through Terry and then the Estate upon Terry's death.

Additionally, the court disagreed with Appellants that the Estate could not bring a derivative suit because it did not comply with the required demand under Corporations Code section 17709.02, subdivision (a)(2) before

---

7    Any brief the Estate might have filed relating to these issues is not included in the record before us.

8    Because Appellants do not challenge the court's findings as to their claims against the Estate, we do not discuss those issues in more detail here.

filing the cross-complaint. To this end, the trial court noted that Appellants'
argument was late and any such demand would have been futile.

After concluding that the Estate had properly brought a derivative
action, the court determined that "[t]he evidence establishe[d] without any
doubt, [Appellants] breached section 2.6 and 4.2 of the . . . Agreement by
causing [the Company] to accept loans from . . . Members (i.e. . . . Stahl and
Stahl member entities, ATA and Jambri) without [Terry's] written consent
and beforehand knowledge." The court also found that "[i]t [was] undisputed
that Stahl, ATA and Bartolotta violated [section 4.5] of the . . . Agreement by
misrepresenting and/or concealing the extent of the loans. It is also clear
these actions were calculated to seek an advantage in the company affairs."

The court then reiterated "[i]t [was] an unequivocal fact that there
[was] a breach of the . . . Agreement." The court found that the Estate was
"unable to place a monetary value on . . . [the] loss" caused by the breach of
contract. As such, it concluded "an award of nominal damages [was] proper."

The court summarized:

> "On the Second Amended Cross-Complaint, the Court finds
> Cross-Complainant, Estate of Terry Cross[,] met its burden
> of proof establishing Stahl, Bartolotta and ATA breached
> Sections 2.6, 4.2(h), and 4.5 of the . . . Agreement. The
> evidence is overwhelming that Cross-Defendants Stahl,
> Bartolotta and ATA breached their fiduciary duties by
> knowingly concealing and/or misrepresenting the existence
> of at least sixteen (16) separate insider loans in direct
> violation of the . . . Agreement.
>
> "The Court, therefore, finds in favor of the
> Defendant/Cross-Complainant, Estate of Terry Cross and
> against Plaintiff/Cross-Defendants, Stahl, Bartolotta and
> ATA on the Second Amended Cross-Complaint. Stahl,
> Bartolotta and ATA are each ordered to pay [the Company]
> the nominal damages of $1.00 each."

11

The court subsequently entered judgment on August 24, 2022. Appellants timely appealed that judgment. Respondents then filed a motion to correct a clerical error in the judgment and amend the judgment nunc pro tunc. The court granted the motion. A corrected judgment was entered that replaced "Nic Bartolotta" with "Nicolas Bartolotta aka Nic Bartolotta" and "the Estate of Terry Michael Cross" with "Fenn Cross as the Personal Representative of the Estate of Terry Michael Cross" as requested by Respondents. Moreover, the corrected judgment included an award of costs in the amount of $32,402.32 and attorney fees in the amount of $380,612.85 in favor of the Estate and the Armaid Company.[9] Appellants timely appealed the corrected judgment.

We granted Appellants' unopposed motion to consolidate their two appeals.

## DISCUSSION

As a threshold matter, we note there seems to be some disagreement among the parties regarding the appropriate standard of review. Appellants maintain a court makes a legal determination whether a complaint presents a derivative or individual cause of action. Here, they argue the trial court made the incorrect legal conclusion, which is subject to de novo review.

Respondents, for their part, acknowledge that de novo review is appropriate if all the issues raised on appeal involve only questions of law. However, in the context of the standard of review, they contend that a trial court's prevailing party determination is reviewed for abuse of discretion. Then they argue throughout the Respondents' brief that the trial court did not err in determining that the Estate was the prevailing party.

---

[9] The court awarded the attorney fees after a noticed motion. Appellants do not challenge the award or amount of attorney fees here.

12

Acknowledging that Appellants did not directly challenge the trial court's prevailing party determination, Respondents nonetheless claim that a "strand of Appellants' theory appears to be a 'stealth appeal' of the real issue driving continued litigation of this case—the sizable award of attorneys' fees in favor of the Estate."

In their reply brief, Appellants emphasize that they did not raise the issue of the determination of the prevailing party in their opening brief. They then reiterate that the only issue before this court is the trial court's determination that Respondents pled and pursued a derivative action.

We take Appellants at their word. The only issue before this court is whether the trial court committed reversable error by finding that the second amended cross-complaint was a derivative action. Further, we observe that the corrected judgment included an award of costs and attorney fees in favor of Respondents. Appellants had the opportunity to appeal that portion of the judgment. They opted not to do so. That issue therefore is not before us.

Typically, a challenge to a derivative suit is brought via demurrer. As such, in challenging a court's conclusion that a complaint has properly alleged a derivative suit, an appellate court often applies a de novo standard of review. (*Kanter v. Reed* (2023) 92 Cal.App.5th 191, 203.) Here, however, we are dealing with a different procedural posture. Below, the trial court found that the operative cross-complaint was a derivative action after trial

13

concluded.  Moreover, the operative cross-complaint was filed during trial. And Appellants did not demur to the second amended cross-complaint.[10]

Nonetheless, the trial court determined that the second amended cross-complaint was a derivative suit as part of its statement of decision, which contains both findings of fact and conclusions of law.  " 'We review the trial court's findings of fact to determine whether they are supported by substantial evidence.  [Citation.]  To the extent the trial court drew conclusions of law based upon its findings of fact, we review those conclusions of law de novo.  [Citation.]' " (*ASP Properties Group, L.P. v. Fard, Inc.* (2005) 133 Cal.App.4th 1257, 1266.)

Yet, regardless of what standard of review we employ, even if we conclude that the trial court erred in finding the operative cross-complaint was a derivative action, we only will reverse the judgment if Appellants persuade us that the error was prejudicial.  "It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result." (*In re Sophia B.* (1988) 203 Cal.App.3d 1436, 1439.)  " 'The burden is on the appellant, not alone to show error, but to show injury from the error.' " (*Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 740, citation omitted.) "Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal." (*Osborn v. Mission Ready Mix* (1990) 224 Cal.App.3d 104, 114.)  A miscarriage of justice is not found "unless

---

10    Respondents argue Appellants waived their challenge here by failing to demur to the operative cross-complaint.  We disagree.  One of Appellants' arguments in the instant matter is that they did not believe they needed to demur to the second amended cross-complaint because it did not include any allegations that could be construed as derivative in nature.  In other words, consistent with other arguments raised here, Appellants claim the allegations in the complaint did not even hint at a derivative cause of action.

it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result." (*Khan v. Medical Board* (1993) 12 Cal.App.4th 1834, 1841; see *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 606.) "Injury is not presumed from error, but injury must appear affirmatively upon the court's examination of the entire record." (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337; see *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105; *People v. Bell* (1998) 61 Cal.App.4th 282, 291.)

Here, on the record before us, we determine that Appellants have not shown that they have been prejudiced by the court's alleged error. In their 31-page opening brief, Appellants only dedicate a single paragraph to argue they were prejudiced. There, Appellants insist, in cursory fashion, they were prejudiced because they did not know the Estate was bringing a derivative action. Thus, "[t]hey could not conduct discovery based on the case being presented as such, and they could not know to conduct trial and present evidence and arguments with knowledge that they were defending a derivative action, not [an] individual action." We are not persuaded by this conclusory argument.

We observe that Appellants' contention directly contradicts their arguments to the trial court in support of their attempt to add the Company as a named plaintiff to their first amended complaint, which was to be filed during trial. There, Appellants claimed the Estate would suffer no prejudice because "no new facts were being added to the pleading. The original pleading already alleged the same conduct of Defendant that was damaging all Plaintiffs including [the Company]. There is no surprise or prejudice to the Defendants, as they have been aware of the allegations that the

15

Defendant's conduct harmed Plaintiffs since the very outset. No new transactions, factual scenarios, or evidence is required by this amendment."

Based on these representations to the trial court, we struggle to contemplate how Appellants can now claim they were prejudiced by the court's finding that the operative cross-complaint was a derivative action. After all, the wrongdoing alleged and proved at trial remained the same under the cross-complaint whether it was a derivative or individual action. Appellants "breached their fiduciary duties by knowingly concealing and/or misrepresenting the existence of at least sixteen (16) separate insider loans in direct violation of the . . . Agreement." Alternatively stated, Appellants' acts breaching the Agreement and violating their fiduciary duties were identical whether the Estate or the Company was the cross-complainant. Moreover, Appellants have not explained what additional discovery they would have conducted or evidence and argument they would have presented at trial if they were aware that the cross-complaint was a derivative action. Without such a showing, they have not persuaded us that they were prejudiced by the trial court's alleged error.[11]

In their reply brief, Appellants advance new arguments regarding prejudice. To this end, they claim that had the error not occurred, it is reasonably probable they would have obtained a better result. We will not

---

[11] We acknowledge that the trial court found that the Estate and the Armaid Company would be prejudiced by a first amended complaint that added the Company as named plaintiff. However, it made that finding of prejudice on different grounds than what Appellants advance here, namely that, months before the requested amendment, the Appellants, in response to a question from the court, announced they were proceeding on an individual action, not a derivative suit. And the court found that the Estate and the Armaid Company had been defending Appellants' action on the grounds that Appellants lacked standing. The amendment would have fundamentally changed the case as to the Estate and the Armaid Company.

ordinarily consider issues raised for the first time in a reply brief. (*Kovacevic v. Avalon at Eagles' Crossing Homeowners Assn.* (2010) 189 Cal.App.4th 677, 680, fn. 2.) An issue is new if it does more than elaborate on issues raised in the opening brief or rebut arguments made by the respondent in respondent's brief. Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

Appellants characterize their argument as a response to Respondents' incorrect argument that the error was not prejudicial. We think the argument that Appellants would have obtained a more favorable result absent the error is fundamental to their burden on appeal here and question why they did not devote more time to that argument in the opening brief. (See *Khan v. Medical Board*, *supra*, 12 Cal.App.4th at p. 1841.) Nevertheless, we shall exercise our discretion and address this additional argument on the merits.

Appellants point out that there was no evidence presented that Terry or the Estate suffered any damages from Appellants' breaches. Therefore, they assume the court would not have found in favor of the Estate on the cross-complaint unless it construed the cross-complaint as a derivative action. We disagree.

Appellants' argument hinges on the contention that neither Terry nor the Estate suffered any damages. In this sense, Appellants' primary (if not only) claim of prejudice is that the court awarded the Company nominal damages but would not have done so if the operative cross-complaint was an individual action. Yet, the court found that the Estate did not prove that the

17

Company was damaged either. It nonetheless awarded the Company nominal damages. And the court explained why it did so: "For instance, a plaintiff is entitled to recover nominal damages for the breach of a contract, despite [the] inability to show that actual damage was inflicted upon him, since the defendant's failure to perform a contractual duty is a legal wrong that is fully distinct from actual damages. *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632." (Italics added.) Thus, the absence of actual damages was not the determinative factor in the court finding in favor of the Estate on the operative cross-complaint.

Against this background, Appellants have not persuaded us that it is reasonably probable they would have obtained a more favorable result absent the error. Whether a derivative or individual action, the conduct at issue was the same. The evidence showing the breaches was the same. The arguments for and against liability was the same. Moreover, the court found the evidence "overwhelming that . . . Stahl, Bartolotta and ATA breached their fiduciary duties . . . [under] the . . . Agreement." The court emphasized the overpowering evidence of the breaches throughout the statement of decision: "The evidence establishes without any doubt, [Appellants] breached sections 2.6 and 4.2 of the . . . Agreement by causing [the Company] to accept loans from . . . Members (i.e., Cross-Defendant Stahl and Stahl member entities, ATA and Jambri) without [Terry's] written consent and beforehand knowledge." "At trial, surprisingly, Stahl initially did not disclose the additional loans, however, after being asked in cross-examination about additional loans, he indicated his confusion in his early testimony (of not disclosing the additional loans) was related to a 'whirlwind' of a year. This exchange raises a concern regarding Stahl's understanding of his role as [the Company's] Chief Operating officer and puts his credibility at issue." "It is

18

undisputed that Stahl, ATA and Bartolotta violated this provision of the . . . Agreement by misrepresenting and/or concealing the extent of the loans. It is also clear these actions were calculated to seek an advantage in the company affairs."

Considering the monstrous amount of evidence of Appellants' multiple breaches of contract and the trial court's willingness to award nominal damages to the Company even though the Estate did not prove the Company suffered actual damages from the breaches, we conclude that Appellants have not proven it reasonably probable that they would have obtained a more favorable result absent the error. Had the trial court found that the cross-complaint was an individual action, we are confident on the record before us that it would have awarded nominal damages to the Estate as it ultimately did to the Company. Whether the Estate or the Company was the actual cross-complainant, actual damages was not proved. In that situation, a court may properly award nominal damages for the violation of a contractual right because "failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages." (*Sweet v. Johnson, supra*, 169 Cal.App.2d at p. 632; *Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965.) Such an award for nominal damages seems particularly appropriate here where the court found evidence of Appellants' multiple breaches of contract "overwhelming," "unequivocal," and "establishe[d] without any doubt."

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.

20